## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL MARTINEZ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 14 C 0369 |
| vs. | ) | |
| | ) | The Hon. ROBERT M. DOW |
| CITY OF CHICAGO and CHICAGO POLICE | ) | |
| OFFICERS JEFFREY WEBER, Star # 13854 | ) | |
| ALLYSON BOGDALEK, Star # 18598, and | ) | |
| JUAN CHAVEZ, Star # 19262 | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' CONSOLIDATED MOTIONS *IN LIMINE* NOS. 1-27

Defendants City of Chicago, Jeffrey Weber, Allyson Bogdalek and Juan Chavez, through their attorneys, Mary S. McDonald, Senior Counsel and Eric S. Palles and Gary Ravitz of Ravitz and Palles, P.C., pursuant to the Federal Rules of Evidence, respectfully move that this Court enter orders precluding Plaintiff, his attorneys, and witnesses from adducing at trial testimony or evidence relating to or making any references to the following:

## DEFENDANTS' MOTION *IN LIMINE* NO. 1

## TO BAR REFERENCE TO ANY VIOLATION OF POLICE DEPARTMENT RULES, POLICIES, REGULATIONS AND GENERAL ORDERS

Any testimony, evidence, or argument regarding the existence of, or standards set by, any Chicago Police Department General Orders or other policies and procedures should be inadmissible at trial. Defendants' motion should be granted because such orders and procedures are not proper evidence on the issue of whether Defendant Officers' conduct was unconstitutional, and their admission would unduly prejudice and confuse the jury on the appropriate standard of liability.

"42 U.S.C. §1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices." *Thompson v. City of*

*Chicago,* 472 F.3d 444, 454 (7th Cir. 2006). Introduction of evidence relating to General Orders on a federal claim would be improper because "the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established."  *Id.* Violations of state statutes, local ordinances, and administrative or department regulations do not give rise to an action under § 1983, unless the rights are guaranteed under the United States Constitution. See *Davis v. Scherer*, 468 U.S. 183, 194 (1984); see also, *Kraushaar v. Flanigan*, 45 F.3d 1040, 1048-49 (7th Cir. 1995); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988).

The overarching issue in this case is whether Defendant Officers violated Plaintiff's constitutional rights when they stopped and seized him on suspicion of unlawful use of a weapon or arrested him for obstructing and resisting their performance. The behavior of the officers is measured by the Fourth Amendment, not state or municipal regulations. See *Archie v. City of Racine*, 847 F.2d 1211, 1215-18 (7th Cir. 1988) (*en banc*); see also *Graham v. Connor*, 490 U.S. 386, 393-95 (1989); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992) ("Under § 1983, the issue is whether [the officer] violated the Constitution, not whether he should be disciplined by the local police force."). What may not be expressly authorized by a police department's rules may be justified and constitutionally reasonable. See *Abbot v. City of Crocker, Mo.*, 30 F.3d 994, 997-999 (8th Cir. 1994) (*abrogated on other grounds by Engleman v. Murray*, 546 F.3d 944, n.3 (8th Cir. 2008)).

We believe Plaintiff will attempt to introduce evidence that Defendant Officers did not have their lapel microphones on their person after they exited their vehicle. In depositions, Plaintiff's counsel asked Officers Weber and Buehler about their use of the microphones and, specifically, whether they violated Chicago Police Directives SO 03-05 VI A.1.b. The fact that the Defendant Officers did not have their lapel microphones on their persons is irrelevant to

whether Plaintiff's constitutional rights were violated when he was arrested. There is no constitutional requirement that police officers wear lapel microphones incident to an arrest and any supposed transgression of a department order, let alone this one, does not rise to a constitutional violation. See *Kraushaar*, 45 F. 3d at 1048. When questioned, both Officers Weber and Buehler opined that they were not in violation of the Order.

Permitting Plaintiff to present evidence or suggest to the jury that the Defendants or other police officers may have breached some obligation to the City through an "alleged" rules violation would be gravely prejudicial to the Defendant Officers in the defense of this matter. *Walker v. Saenz*, No. 91 C 3669, 1992 U.S. Dist. LEXIS 16454, at *12 (N.D. IL. Oct. 27, 1992) (granting motion *in limine* because of confusion in distinguishing a Chicago Police Department rule violation from a constitutional violation). A jury presented with such a "violation" would have difficulty separating the purported rules violation, for which Plaintiff has no claim, from the alleged constitutional violation issues on which the jury is deciding liability and damages. *Id.* There is a clear risk that a juror presented with evidence of a rules violation would assume, in spite of any instructions to the contrary, that a constitutional violation had occurred. Additionally, to the extent that the evidence suggests that certain officers may not have received appropriate training in connection with lapel mike use, this inquiry improperly injects the City's conduct into a case where the sole consideration is properly the conduct of the officers. Any deficiencies with the City's training program are not at issue here. There is no existing *Monell* claim; consequently, the resulting jury confusion would only serve to obscure the liability issues in this case. Accordingly, Plaintiff should not be permitted to interject the possibility of a rules violation into these proceedings. *Ratliff v. City of Chicago*, No. 10 CV 739, 2012 U.S. Dist. LEXIS 164500, at *8 (N.D. IL. Nov. 19, 2012) (Dow, J.), Fed. R. Evid. 401, 402 and 403.

## DEFENDANTS' MOTION *IN LIMINE* NO. 2

## TO BAR EVIDENCE OR ARGUMENT THAT THE CITY OF CHICAGO FAILED TO PRESERVE VIDEO FROM POLICE VEHICLES

Defendants anticipate that Plaintiff will argue that the videos from Officer Bogdalek's and from Officer Chavez's car are missing. Plaintiff requested the videos in discovery in this case. Sergeant Lance Becvar searched for car video in connection with the squad cars responding to the "person with a gun incident" on January 17, 2012. The Sergeant swore by affidavit that a number of beat cars were not equipped with video, there was no video found in a number of vehicles including Officer Bogdalek's and Officer Chavez's, that certain vehicles recorded videos in their car on January 17, 2012, but were purged pursuant to the City of Chicago's 90-day retention policy, and that the video from the car operated by Officers Weber and Buehler was found and duplicated. Specifically, Sergeant Becvar swore to the following:

- Beat numbers 972, 910, 989, 931, 833, and 961e did not have car cameras at the time of incident

- Beat numbers 923, 935 (Bogdalek), 941, 988a (Chavez), 847, and 831 did not contain video of the incident

- Beat numbers 911 and 913 recorded videos, which were purged in accordance with the 90-day retention policy

- Beat number 921 (Weber and Buehler) contained video which was duplicated and provided in this case

While a jury may draw an adverse inference from missing evidence when a party has a duty to preserve evidence, yet intentionally destroys such evidence in bad faith, see *Trask-Morton v. Motel 6 Operating L.P.*, 534 F. 3d 672, 681 (7th Cir. 2008); see also *Faas v. Sears Roebuck & Co.,* 532 F. 3d 633, 645 (7th Cir. 2008), the crucial element is not that evidence was destroyed but rather the reason for the destruction. *Faas*, 532 F. 3d at 644; see also *Park v. City of Chicago*, 297 F. 3d 606, 615 (7th Cir. 2002) (noting that the destruction of or inability to produce a document, standing alone, does not warrant an inference that the document, if

produced, would have contained information adverse to the [plaintiff's case). "Bad faith" is a pre-requisite to imposing sanctions for the destruction of evidence. See *Trask-Morton*, 534 F. 3d at 681. Plaintiff has not made any spoliation claim, requested sanctions or otherwise sought to establish that the missing videos from the cars were destroyed for the purpose of hiding adverse information. There is no testimony or other competent evidence to support what the Seventh Circuit has deemed the crucial element in a spoliation claim: that the evidence was destroyed "for the purpose of hiding adverse information." See *Trask-Morton*, 534 F. 3d at 681; see also *Norman-Nunnery v. Madison Area Technical College,* 625 F. 3d 422, 428-429 (7th Cir. 2010); *Fass*, 532 F. 3d at 645.

Plaintiff has not shown that the failure to retain any of the purged videos violates the terms of any applicable retention regulation; yet even if he could show a violation, the Seventh Circuit has consistently held that an adverse inference will not be automatically triggered where "the record lack[s] any indicia of bad faith or intent on the part of the Defendants." *Richardson v. City of Chicago,* No. 08 C 4824, 2012 U.S. Dist. LEXIS 119520, at *23 (N.D. IL. Aug. 22, 2012) (Kendall, J.) (finding that a spoliation instruction would have been improper without the Court making a finding of bad faith on the part of the Defendants).

Unless Plaintiff can prove by a preponderance of the evidence that the video was destroyed in bad faith for the purpose of hiding information adverse to the Defendants, he is not entitled to suggest, argue or even mention that the video was not located. Therefore, this Court should bar any mention that video from the police cars are missing or were destroyed.

## DEFENDANTS' MOTION *IN LIMINE* NO. 3

### TO BAR ANY EVIDENCE, ARGUMENT, OR INNUENDO REGARDING ALLEGED POLICIES, CUSTOM OR PRACTICE INVOLVING THE CITY OF CHICAGO

A number of these motions *in limine* anticipate the various ways that Plaintiff will attempt to inject "other acts" or other actors to unfairly prejudice the jury against the police. See Nos. 4, 7

and 8, *infra*. One such anticipated ruse is to proffer "other acts" under the guise of arguing that the Chicago Police Department has a particular pattern or practice, classically "the code of silence" or in this case, "all cops lie" (see Plaintiff's proposed Exhibit 55). Such alleged custom or practice arguments should be barred. Even if there were probative evidence to support such a claim, it is not relevant because there is no *Monell* claim in this case. *United States v. Gomez,* 763 F.3d 845 (7th Cir. 2014) (*en banc*) requires the Court to inquire not only *whether* evidence is relevant, but *how* it is relevant. While a forbidden propensity inference may be difficult to discern, to the extent that Plaintiff claims a police practice this is patently propensity evidence. See *United States v. Miller*, 673 F.3d 688, 699 (7th Cir. 2012) ("Pattern evidence *is* propensity evidence." (emphasis in original)). Ascribing a *Monell* framework to this testimony and argument employs a Trojan Horse to cart in inadmissible "other act" evidence. Plaintiff's attempt should be resisted and the evidence excluded.

## DEFENDANTS' MOTION IN LIMINE NO. 4

### TO BAR TESTIMONY, EVIDENCE, AND ARGUMENT REGARDING OTHER CIVIL LAWSUITS, ARRESTS AND/OR THE DISCIPLINARY HISTORIES, SPARS AND/OR COMPLAINT REGISTERS AGAINST DEFENDANTS

Plaintiff has proffered Exhibits 20-24, 28 and 53, constituting as many as fourteen citizen complaints against the three Defendant Officers, and four "may call" witnesses (Smith, Neighbors, McReynolds and Acuff) to testify about an October, 2004 off-duty incident involving Officer Weber. Defendants move to bar this evidence as improper character evidence and propensity evidence pursuant to Fed. R. Evid. 404.[1]   Moreover, any evidence of prior lawsuits, civilian complaints, or discipline is irrelevant, would amount to no more than hearsay, and would be more prejudicial than probative; thus, such evidence should be barred pursuant to Fed. R. Evid. 403.

---

1  Defendants will deal with Exhibits 20 and 53 separately in other Motions in Limine file herein. See Motions Nos. 5 and 10, *infra*.

In *United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014) (*en banc*) our Court of Appeals announced a "shift in paradigm" for district judges interpreting other-act evidence associated with Federal Rule of Evidence 404(b). *Id.* at 853. Eschewing the four-part test that had formed the analysis of such cases since *United States v. Zapata*, 871 F.2d 616 (7th Cir. 1989), the Seventh Circuit announced a more rules-based approach that initially asks whether the other-act evidence is relevant under Rules 401 and 402. If the judge decides that the proffered other-act evidence is relevant under these two Rules, next, he must analyze whether, in the absence of a propensity inference, the proffered other-act evidence is relevant to a non-propensity purpose identified in Rule 404(b). If the other-act evidence is relevant to a non-propensity purpose identified in Rule 404(b), the judge must then consider whether such relevance is outweighed by the myriad of issues enunciated in Rule 403, most notably unfair prejudice. Post-*Gomez*, district courts perform a more stringent gatekeeping function than before. Meanwhile, the proponent of the 404(b) evidence bears a heightened burden that requires him to identify with specificity how the proffered evidence is relevant for a non-propensity purpose.

It is well-established that propensity evidence is inadmissible under Fed. R. Evid. 404(b) to prove that a party acted consistently with his alleged bad character on the occasion in question. See *Huddleston v. U.S.*, 485 U.S. 681, 685 (1988); see also *U.S. v. Shriver*, 842 F.2d 968, 974 (7th Cir. 1988). Thus, any evidence, testimony, or argument regarding a Defendant Officer's prior lawsuits, civilian complaints, and disciplinary history in law enforcement must be barred. See *Anderson v. City of Chicago*, No. 09 C 2311, 2010 U.S. Dist. LEXIS 116713, at *7 (N.D. IL. Nov. 2, 2010) (St. Eve, J.) (barring evidence of prior civilian complaints against defendant officer as impermissible propensity evidence); see also *Caldwell v. City of Chicago*, No. 08 C 3067, 2010 U.S. Dist. LEXIS 7121, at *8 (N.D. IL. Jan. 28, 2010) (Der-Yeghiayan, J.) (barring evidence of unrelated police misconduct).

The IPRA log exhibits have no probative value. They consist entirely of hearsay and are being proffered, for the most part, with no testimonial foundation; except for the single 2004 incident described above, the citizen complainants are not identified as witnesses. Nor are they relevant to any of the issues in the case; *i.e,* whether there was probable cause to seize and to arrest Plaintiff or whether the Defendant Officers' conduct on January 17, 2012, was reasonable. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402.

Were the evidence relevant, its probative value is far outweighed by the danger of unfair prejudice. Fed. R. Evid. 403; see also *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d. Cir. 1991) (holding that admission of evidence of other complaints against police officers was irrelevant and overwhelmingly prejudicial to defendant); *Lataille v. Ponte*, 754 F.2d 33, 34 (1st Cir. 1985) (prejudicial error to admit past disciplinary records).

The Seventh Circuit's emphasis in *Gomez* upon the importance of Fed. R. Evid. 403 in this context can hardly be overstated. "Other-act evidence raises special concerns about unfair prejudice because it almost always carries some risk that the jury will draw the forbidden propensity inference." *Gomez, supra* at 857. Additional Rule 403 factors – for example, the "danger of 'confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence'" (*Id*. at 857, n.4, *quoting* Fed. R. Evid. 403) – also militate in favor of excluding some or all of the Plaintiff's proffered 404(b) evidence.

## DEFENDANTS' MOTION *IN LIMINE* NO. 5

## TO BAR EVIDENCE OF POLICE OFFICER MISCONDUCT

Defendants anticipate that Plaintiff will seek to introduce evidence at trial that Officer Allyson Bogdalek engaged in misconduct "in an unrelated matter…." See Order (Document 74, dated December 12, 2014) at p. 1. Plaintiff has indicated that he intends to call Bogdalek as an adverse witness, even though "it's quite clear that the sole purpose of calling Ms. Begadylok

[sic] will be to impeach her." Mem. Op. (Document 74, dated 10-29-14) at p.2, n.2 (Cole, M.J.). Indeed, this would be an improper tactic: See Document 74, *supra* at p. 2, n.2 (citing *United States v. Vasquez*, 635 F.3d 889, 894 (7th Cir. 2011), quoting *United States v. Giles,* 246 F.3d 966, 974 (7th Cir. 2001).

As Plaintiff notes in the Pretrial Order (Schedule 4, witnesses 31-36), Bogdalek has consistently asserted her Fifth Amendment privilege on past occasions when questioned her about the unrelated matter. Defendant Officers object to Plaintiff calling Officer Bogdalek as an adverse witness simply to maximize and dramatize her assertion of Fifth Amendment privilege. *Cf. Evans v. City of Chicago*, 513 F.3d 735, 740-41 (7th Cir. 2008) (in lieu of allowing plaintiff to call defendant officer for the purpose of asking him a series of questions which he knew the officer would answer by asserting Fifth Amendment, no error for judge to instruct jurors that the defendant had previously refused to answer questions about the case and allowing them to draw an adverse inference from his refusal to take the stand). The *Evans* court rejected the plaintiff's argument that he "had a right to call [the defendant] to the stand solely to invoke his Fifth Amendment privilege," calling the claim "too broad." *Id.*

Additionally, in the Pretrial Order (Schedule 5) Plaintiff has proffered Exhibits 20, 26-27, and 54, which constitute extrinsic evidence concerning this identical subject. Defendant Officers object based on Federal Rules of Evidence 401, 402,403 and 404(b), and move to bar all evidence of the unrelated matter that is referred to in the Order, which includes Officer Bogdalek's testimony as an adverse witness called by Plaintiff, and all related arguments

## DEFENDANTS' MOTION *IN LIMINE* NO. 6

### TO BAR REFERENCE TO THE STATE'S ATTORNEY'S CONDUCT, INCLUDING ANY DESTRUCTION OF DOCUMENTS, AND ANY SANCTIONS IMPOSED

Defendants expect that Plaintiff will attempt to introduce evidence a long running dispute between Plaintiff's counsel and the Cook County State's Attorney's Office over the destruction of

court documents, which resulted in sanctions against the office. See *Martinez v. City*, 09 CV 5938, Docket No. 232 (N.D. IL. Nov. 20, 2014). Introduction of such evidence is not relevant to the claims in this case, and, at any rate, would be highly prejudicial to Defendants and likely to confuse the jury.

The alleged destruction of the criminal file in this case is completely irrelevant to any of the claims in this case, and therefore, inadmissible. Fed. R. Evid. 402. The Assistant State's Attorneys testified that these documents were destroyed in connection with the office's policy, not at the behest of anyone at the City or the Defendant Officers; see *Martinez v. City*, 09 CV 5938, Docket No. 232 (N.D. IL. Nov. 20, 2014), and further, that the files would have been preserved had Mr. Kosoglad, then serving in the capacity of Daniel's criminal defense lawyer, requested their preservation prior to the conclusion of the criminal trial. Plaintiff alleges that the State's Attorney's Office policy on destroying files violates state law; but again, this has no bearing on the Defendant Officers' conduct and whether or not they violated Plaintiff's rights.

Furthermore, the potential for prejudice against Defendants is large, particularly if Plaintiff is allowed a spoliation instruction as a result of said conduct (as he appears to be seeking). The fact that the files were destroyed and sanctions were awarded as a result may give the impression (and Plaintiff may argue) that this was done for an improper purpose at the behest of Defendants, even though there is *no evidence* supporting that theory. To attempt to smear the character of Defendants by introducing the alleged misconduct of the State's Attorney, a ***non-party*** in this action, should not be permitted. If the Plaintiff believes that the State's Attorney office was incorrect, he is free to pursue a claim against them, but should not be permitted to attempt to vindicate any violations against the State's Attorney indirectly through this case.

The conflict in this case is also longstanding and complicated, with a number of interactions leading to the sanctions order. If Plaintiff is permitted to introduce such evidence, Defendants

would need to present testimony of multiple individuals confirming the State's Attorneys' policy and the reasons for destruction of the records, amounting to a mini-trial within a trial. Furthermore, the issue is currently on appeal with the Seventh Circuit. See *McClellan v. Bucklo*, 15-3410. Introducing such evidence be an enormous waste of time, essentially a trial within a trial, and a source of potential jury confusing. As a result, any such evidence should be excluded. Fed. R. Evid. 403.

## DEFENDANTS' MOTION *IN LIMINE* NO. 7

### TO BAR TESTIMONY, EVIDENCE, OR ARGUMENT REGARDING A "CODE OF SILENCE" OR "BLUE WALL" OR THAT CHICAGO POLICE OFFICERS GENERALLY PROTECT EACH OTHER, COVER UP OTHER OFFICERS' MISCONDUCT OR FAIL TO REPORT POLICE MISCONDUCT

Defendants seek to bar Plaintiff from offering any testimony, evidence or argument that police officers lie, conspire, cover up, or otherwise maintain a "code of silence" or "blue wall" to protect their fellow officers. This Court should exclude such evidence because it is not relevant to the jury's determination of credibility of the police testimony in this case and would only serve to prejudice Defendants. Such evidence is admissible at trial only if it makes the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Moreover, even relevant evidence should be excluded where its prejudicial effect outweighs its probative value. Fed. R. Evid. 403; see also *Ratliff v. City of Chicago*, No. 10 CV 739, 2012 U.S. Dist. LEXIS 164500, at *11-12 (N.D. IL. Nov. 19, 2012) (Dow, J.).

Generalized allegations of a police "code of silence" or that police officers cover up for other police officers are:

> akin to the conclusion that all mechanics, when they have the opportunity, assess overcharges for unnecessary repairs; that all politicians, when the public's back is turned, accept bribes; and that all taxpayers, when they think they can get away with it, cheat on

> their taxes–and no one ever tells. In a court of law, however justice
> is dispensed based on evidence of articulated and proven facts, not
> on generalized assumptions and prejudices.

*Sanders v. City of Indianapolis*, 837 F. Supp. 959, 963 (S.D. Ind. 1992). In that regard, this

evidence is no different from inadmissible "other act" evidence, except that the propensity

inference is more attenuated because it has no particular connection to the Defendant Officers.

Moreover:

> If [evidence of a police "code of silence"] were held admissible here,
> it logically would be admissible in every suit, civil or criminal, in
> which a police officer was alleged to be lying to support the
> testimony of a fellow police officer. Indeed, it would be admissible
> in every civil and criminal case in which even a single police officer
> testified.

*Shaw v. City of New York*, 1997 U.S. Dist. LEXIS 4901, at *27 (S.D.N.Y. Apr. 14, 1997). This

Court, too, should decline to open the floodgates to this type of generalized evidence, which would

only unduly prejudice individual Defendants.

Accordingly, pursuant to Rules 401, 402, and 403, Plaintiff should be barred from

presenting at trial any testimony, evidence, or argument that police officers in general lie, conspire,

cover up, or otherwise maintain a "code of silence" or "blue wall" to protect their fellow officers.

Therefore, all statements regarding Chicago Police Officers allegedly covering up for each other

should be barred.

## DEFENDANTS' MOTION *IN LIMINE* NO. 8

### TO BAR TESTIMONY, EVIDENCE, OR ARGUMENT THAT ANY NON-DEFENDANT POLICE OFFICERS OR OTHER CITY OF CHICAGO EMPLOYEES ENGAGED IN MISCONDUCT

Plaintiff should be barred from presenting any testimony, evidence, or argument about the

conduct or statements that comprise his family's longstanding grievances against other police

officers or the City of Chicago because such evidence is irrelevant and would only serve to inflame

the jury and unfairly prejudice Defendants while confusing the actual claims at issue. *Ratliff v.*

*City of Chicago*, *supra,* 2012 U.S. Dist. LEXIS 164500, at *9-10 (N.D. IL. Nov. 19, 2012) (Dow, J.); see also Fed. R. Evid. 401, 402, AND 403. There are several instances that Plaintiff and his family members would seek to inject into this case: 1) the September 23, 2008 incident that gave rise to Case No.09 C 5938 (treated separately in No. 10, *infra*), 2) an October 2009 incident where Daniel and Vanessa Martinez claim they were verbally abused by other Chicago police officers; 3) testimony by Sofia Martinez that an unidentified officer told her that if she didn't open the door, he could still open it with his gun; 4) the opinion of various Martinez family members, without foundation, that police drive by their home with inordinate frequency to harass them; and 5) the threat to Vanessa Martinez by an unknown officer at an unknown time to shoot Plaintiff's dog. These incidents are irrelevant, unfairly prejudicial, and potentially misleading to the jury; they don't remotely touch upon the conduct of these Defendant Officers. Therefore, all arguments regarding evidence or conduct of unknown or other officers should be barred at trial.

### **DEFENDANTS' MOTION *IN LIMINE* NO. 9**

#### **TO BAR ANY TESTIMONY, EVIDENCE, OR ARGUMENT OF CONTROVERSIAL, UNCONSTITUTIONAL OR, ILLEGAL, OR QUESTIONABLE CONDUCT BY OFFICERS WHO ARE NOT PARTIES TO THIS CASE**

Plaintiff may attempt to mention, discuss or refer to other events regarding allegations of police misconduct, such as recently highly publicized incidents involving Chicago Police Officers. This includes, but is not limited to, references to such highly publicized cases of recent media interest involving the shooting by Jason Van Dyke of Laquan McDonald, or incidents involving Anthony Abbate, Jon Burge, Corey Flagg, or Jerome Finnigan, among others. These recent local events have placed allegations of police misconduct before the public through extensive media coverage, in which law enforcement personnel are often depicted in an unfavorable, and even hostile, manner. In this current climate, references to alleged police misconduct during the trial can only serve to inflame the jury against the police in general and against the Defendant Officers

in particular. Comments about or implied references to other incidents of police misconduct have no probative value, are totally irrelevant to the issues presented, and will only serve to inflame the jury. See, *e.g., Saunders v. City of Chicago*, 320 F. Supp. 2d 735, 740 (N.D. IL. Jun. 10, 2004) (Bucklo, J.) (granting motion to bar evidence or testimony of allegations other police misconduct). Accordingly, Plaintiff and his witnesses should be precluded from making any reference to any alleged police misconduct, including recent, highly publicized instances of such misconduct. *See* Fed. R. Evid. 401, 402, 403; see also *Moore v. City of Chicago*, No. 02 C 5130, 2008 U.S. Dist. LEXIS 31634, at \*15 (N.D. IL. Apr. 15, 2008) (Moran, J.) (granting motion *in limine* to bar publicized incidents of police misconduct). Plaintiff should therefore not be permitted to argue, imply, or make any references to the jury as to any alleged police misconduct by other Chicago Police Officers.

## DEFENDANTS' MOTION *IN LIMINE* NO. 10

### TO BAR EVIDENCE OR ARGUMENT CONCERNING SPECIFIC CLAIMS INVOLVED IN CASE NO. 09 C 5938

At the time of his arrest, Daniel Martinez and his family members were plaintiffs in *Alberto Martinez, et al. v. City of Chicago*, No. 09 CV 5938 (hereinafter, "the Alberto Martinez case"), a civil rights action arising from a September 2008 incident in which Daniel Martinez was also a plaintiff. Officer Bogdalek was a defendant in the Alberto Martinez case. Officer Weber had also been a defendant in the case until the plaintiffs voluntarily dismissed him in January 2011. Plaintiff contends that his arrest on January 17, 2012, was in retaliation for filing the Alberto Martinez case because "they knew who I was and yet they still arrested me."

Other than its pendency in January 2012, there is nothing relevant about the 2009 case. Plaintiff will attempt, through a proffer of the complaint in the 2009 (Plaintiff's Proposed Exhibit 53) and otherwise, to inject the allegations from the 2008 incident into a broader narrative of alleged harassment against him.

14

It's no wonder that Plaintiff and counsel like to dwell upon the older case; Daniel and his family accepted an offer of judgment whereby they split $100,000 and their attorneys received $550,000. The case continued as a profit center post-judgment when Judge Grady assessed in excess of $35,000 in attorney's fees against the non-party Cook County State's Attorney Office as a discovery sanction. See MIL No. 6, *supra.* This is a substantial amount of money, and could easily confuse the jury as to the merits, and the worth, of this case. The prejudicial impact should be patent.

Significantly, the judgment provided: "Nothing in the offer of judgment shall be construed as an admission of liability by any defendant." *Alberto Martinez v. City of Chicago et al.*, No. 09 C5938, Dkt. 224. This includes Allyson Bogdalek. The jury should not be allowed to speculate how the *Alberto Martinez* case was resolved, or why it was resolved and its resolution should not be used to prove or even suggest liability in this case.

Plaintiff and his family should be precluded from airing their grievances concerning the police conduct or any damages that they claim to have sustained in the 2009 case, not simply as a matter of evidence but also as a matter of *res judicata.* They have adequately monetized the events of September 2008 and it is time that they move on.

## DEFENDANTS' MOTION *IN LIMINE* NO. 11

### TO BAR THE TESTIMONY, EVIDENCE, AND ARGUMENT REGARDING THE INDEPENDENT POLICE REVIEW AUTHORITY'S INVESTIGATION OF ANY OTHER INCIDENTS

Any testimony evidence regarding the Independent Police Review Authority ("IPRA") investigation into this and other Martinez family complaints, its findings, use of the term "To/From" or testimony from the investigators conducting the investigation should be barred.

First and foremost, any statements of investigators conducting the investigation would merely be hearsay testimony (only one may be called) and the findings are irrelevant to the

issues at hand. Defendants' motion should be granted because the proposed testimony consists of inadmissible hearsay, lacks foundation, and constitutes undisclosed expert opinions. Moreover, the investigators' opinions are irrelevant. Introducing the findings of IPRA would mislead the jury regarding the standard of liability in this case and the jury could base its decision on the IPRA investigation, rather than the evidence presented at trial. See, *e.g., Sallenger v. City of Springfield*, No. 03-3093, 2007 US Dist. LEXIS 64991, at *4 (C.D. IL. Sept. 4, 2007) (finding that evidence related to internal investigations, or lack thereof, and any outcome, was inadmissible as the probative value that the evidence may have is outweighed by the danger of unfair prejudice to defendant if it were to be admitted as there was substantial risk of jury confusion or the possibility that the jury would base its decision on an improper basis).

Secondly, Plaintiff failed to disclose any investigators of IPRA as experts pursuant to the requirements of Rule 26(a)(2). Testimony of any IPRA witnesses must be excluded due to Plaintiff's failure to disclose these investigators as opinion witnesses. See *Musser v. Gentive Health Services*, 356 F.3d 751, 758 (7th Cir. 2004). Moreover, all investigators must be barred from testifying as to their personal opinions regarding this incident. None qualify as an expert in police practices and Plaintiff has not disclosed them as such. They were not present during the incident and do not have any firsthand knowledge of anything that occurred. Simply repeating inadmissible hearsay under the guise of "opinion testimony" does not make the proposed testimony admissible. See Fed. R. Evid. 703.

Further, the investigator cannot render any expert opinions on the factual disputes pertinent to this case. The investigator does not have any particular expertise regarding any of these determinations and indeed, they do not claim any such expertise. The investigators lack the factual foundation and professional expertise that would be required of disclosed expert witnesses before

they could testify. The personal conclusions of IPRA investigators regarding certain facts of this case are simply irrelevant.

Finally, the existence of the IPRA investigation is unfairly prejudicial and tends to confuse the issues. An "investigation" unfairly confers a patina of respectability to otherwise unsubstantiated allegations. Moreover, as noted elsewhere (MIL No. 1, *supra*), a violation of Chicago Police Department rules, regulations or policies is not to be confused with a constitutional violation. Therefore, any testimony evidence regarding the Independent Police Review Authority ("IPRA") investigation, its findings, use of the term "To/From" or testimony from the investigators conducting the investigation should be barred.

## DEFENDANTS' MOTION *IN LIMINE* NO. 12

### TO BAR EVIDENCE OF COCONSPIRATOR STATEMENTS WITHOUT PRIOR FOUNDATION

Defendants move *in limine* to bar Plaintiff from presenting evidence and arguments in support of a conspiracy claim until they satisfy Fed. R. Evid. 104 and Seventh Circuit law governing the admissibility of coconspirator declarations.

Prior to introducing any evidence of statements by the purported conspirators in this matter, Plaintiff must satisfy the Court that he has met his burden under Fed. R. Evid. 104 and Seventh Circuit law governing the admissibility of coconspirator declarations. Under Fed. R. Evid. 104(a), Plaintiff not only has the burden to sufficiently establish the existence of the conspiracy, but he must also sufficiently establish that every codefendant declaration he wants to use is admissible under Fed. R. Evid. 801(d)(2)(E). *United States v. Santiago*, 582 F.2d 1128, 1134 (7th Cir. 1978).

The Seventh Circuit requires the Court to make a preliminary determination under Fed. R. Evid. 104 as to the admissibility of a purported coconspirator declaration by considering whether "it is more likely than not that the declarant and the defendant were members of a

conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy …"  *United States v. Santiago*, *supra* at 1134. This procedure is not limited to criminal cases involving allegations of conspiracy. See, e.g., *Farris v. County of Camden*, 61 F. Supp. 2d 307, 313 (D. N.J. 1999) (denying "the motion for summary judgment without prejudice to the right of Norcross and the Committee to renew this motion at the conclusion of a pre-trial hearing conducted pursuant to Rule 104(a) to determine the admissibility of the alleged coconspirator statements under Rule 801(d)(2)(E) of the Federal Rules of Evidence.").

Despite having taken the depositions of the alleged conspirators, Officer Bogdalek, Officer Weber and Officer Chavez, Plaintiff has failed to identify even one concrete codefendant declaration that he proposes to offer at trial in support of his conspiracy allegations. Indeed, in none of these depositions did Plaintiff question the defendants on any conversations that may have taken place on January 28, 2012, the date when he alleges the conspiratorial agreement took place.

Plaintiff's conspiracy theory is so hopelessly obscure that a preliminary determination of admissibility of asserted coconspirator statements is required. There is little time left for the Defendants to assess them and this Court to address them. As such, Defendants move to bar Plaintiff's references, claims or assertions at trial that a declaration or an act is proof of the alleged conspiracy unless and until he identifies them to the Court under Rule 104.

## DEFENDANTS' MOTION *IN LIMINE* NO. 13

### TO BAR ANY EVIDENCE, ARGUMENT, OR INNUENDO AS TO WHY OR HOW DANIEL MARTINEZ WAS ACQUITTED OF OFFENSES FROM JANUARY 17, 2012

The fact of Plaintiff's acquittal is relevant only to a single issue: to satisfy the "termination of a proceeding in his favor" element of his state malicious prosecution claim." *Boyd v. City of Chicago*, 378 Ill. App. 3d 57, 71 (1st Dist. 2007). This element can easily be

stipulated to. Any attempts to mine the reasons or circumstances of the acquittal would inject unnecessary confusion of the issues and consequent prejudice to the Defendants.

The paramount issue in the malicious prosecution claim is whether Officers Weber and Chavez had probable cause to arrest Plaintiff for resisting and obstructing them, not whether there was adequate evidence to convict. *Sexton v. Cotton*, No. 06 C 4225, 2008 U.S. Dist. LEXIS 89762, at *70 (Nov. 5, 2008) (Dow, J.), *citing Ross v. Mauro Chevrolet*, 369 Ill. App. 3d 794, 802 (1st Dist. 2006) (probable cause is fatal to a malicious prosecution claim). In a malicious prosecution claim, probable cause is defined as a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged. It is the state of mind of the person commencing the prosecution that is at issue—not the actual facts of the case or the guilt or innocence of the accused. *Williams v. City of Chicago*, 733 F.3d 749, 759 (7th Cir. 2013).

Adding to the layman's confusion is, of course, the different standards of proof that govern the respective proceedings. Daniel Martinez's acquittal in the criminal case connotes merely that the state failed to prove his guilt beyond a reasonable doubt. Defendants would not be precluded, if necessary, from demonstrating by a preponderance standard that Plaintiff resisted and obstructed them. But this would place the focus on a false issue and turn the burden of proof on its head.

## DEFENDANTS' MOTION *IN LIMINE* NO. 14

## TO BAR PLAINTIFF FROM ALLEGING PHYSICAL INJURY

Plaintiff in his deposition testified that "the only injury I really suffered was my wrists were hurting at work."    Plaintiff testified that he did not get any treatment for it and he figured it would go away, which it did. This injury did not keep him from work**.** He believed the soreness was caused by handcuffs and by officers stepping on him. Although the Seventh Circuit

has "on occasion recognized valid excessive force claims based on overly tight handcuffs."
*Tibbs v. City of Chicago.*, 469 F. 3d 661, 666 (7th Cir. 2006), those circumstances do not pertain
here. First, the claim has never been pleaded. More fundamentally, there was no constitutional
violation. *Tibbs* is instructive. In *Tibbs*, the Seventh Circuit held that a Plaintiff could not survive
summary judgment where he "complained to [the officer] once about his handcuffs without
elaborating on any injury numbness, or degree of pain; [he] was handcuffed for about twenty-
five to thirty minutes (from the time of his arrest to his arrival at the lockup facility); he
experienced redness on his wrists for less than two days; and he neither sought nor received
medical care for any alleged wrist injury."   469 F.3d at 666; see *Sow v. Fortville Police Dep't*,
636 F. 3d 293, 298 (7th Cir. 2011) (no genuine issue of material fact regarding plaintiff's too-
tight handcuffing when the police officer refused to loosen the handcuffs after the plaintiff
complained only once that the handcuffs were too tight, presented no evidence that he provided
any elaboration, did not complain of any injury when he was taken to the jail and did not receive
any treatment).

The fact that Plaintiff was handcuffed is not relevant to his claims of unlawful search and
seizure, false arrest, retaliation or malicious prosecution, which are based upon a lack of
probable cause. Such evidence could only serve to prejudice the Defendant by engendering
sympathy for the Plaintiff or to confuse the jury. Because this evidence is not relevant, and more
prejudicial than probative, Plaintiff should be excluded from introducing evidence or argument
regarding his handcuffing. See Fed. R. Evid. 401, 402, 403. Therefore, Plaintiff should be barred
from alleging any physical injury.

## DEFENDANTS' MOTION *IN LIMINE* NO. 15

### TO BAR EVIDENCE OR ARGUMENT OF ALLEGED
### RACIAL MOTIVATION

Defendant Officers believe that Plaintiff will attempt to elicit testimony or argue that the actions of Defendant Officers Weber, Chavez and Bogdalek were racially motivated. Such "'appeals to racial passion can distort the search for truth and drastically affect a juror's impartiality.'" *Dyson v. Szarzynski*, 13 CV 3248, 2014 U.S. Dist. LEXIS 174671, at *26 (N.D. IL. Dec. 18, 2014) (Kim, J.) (*quoting United States v. Doe*, 903 F.2d 16, 25 (D.C. Cir. 1990)). Any attempts at eliciting such testimony or making such arguments should be barred because there is no evidentiary foundation for these contentions and the claims are not relevant to any material issue. Any testimony and argument concerning racial animus or bias would serve only to inflame the jury and result in unfair prejudice to the Defendants that would substantially outweigh any probative value. Fed. R. Evid. 403.

Plaintiff is Hispanic. Defendant Chavez is Hispanic and Defendants Weber and Bogdalek are Caucasian. However, there is no evidence to suggest that those innocuous facts played any part in the Defendant Officers' actions or inactions with respect to Plaintiff. There is no evidentiary basis to conclude that Plaintiff was the target of racial animus by Defendant Officers or any other police officer. Furthermore, Plaintiff did not assert any race-based causes of action in this case. Therefore, any testimony or arguments concerning or focusing on race have no relevance to the material issues in this case. Fed. R. Evid. 401. Moreover, any reference, argument or attempt to elicit testimony regarding racial profiling in general within the Chicago Police Department, the General Order that discusses racial profiling, or any witness' personal or professional opinion with regard to racial profiling should be barred for the same reasons. Therefore, Plaintiff should be barred from eliciting testimony, referencing or making arguments

that the actions or inactions of the Defendant Officers were motivated by race or that the Defendant Officers or other police personnel are racist.

## DEFENDANTS' MOTION *IN LIMINE* NO. 16

### TO BAR WITNESSES PLAINTIFF FAILED TO PROPERLY DISCLOSE PURSUANT TO FRCP RULE 26(a)

Throughout their pre-trial order, Plaintiff identified witnesses who were either not disclosed in Plaintiff's Rule 26 disclosure or improperly disclosed. These witnesses are: Lillian Ramos, ASA Mary McClellan, Darryl Smith, Shaniece Neighbors, Jeffrey McReynolds and Samantha Acuff. The admissibility of ASA McClellan's testimony and that of Smith, Neighbors, McReynolds and Acuff are dealt with elsewhere. (See MIL Nos. 4 and 9, *supra)*. Plaintiff's counsel informally disclosed Lilliana Ramos, Plaintiff's girlfriend, as a damages witness, but when Defendants subpoenaed her for a deposition she failed to appear. Therefore, these witnesses should be barred for failure to comply with Rule 26(a)(1).

## DEFENDANTS' MOTION *IN LIMINE* NO. 17

### TO BAR REFERENCES TO THE FACT THAT DEFENDANT OFFICERS DID NOT OBTAIN A SEARCH WARRANT

Defendants anticipate that Plaintiff will testify regarding the fact that there was no search warrant obtained prior to entering the Martinez residence. This incident started as a result of a "person with a gun call" which was dispatched by the Office of Emergency Communication to the Defendant Officers. Because this case involved exigent circumstances, trying to stop a person with a gun, it was impractical and not required by law for the police to delay entry into the Martinez residence until they could obtain a search warrant. Hot pursuit of a felony suspect is a well-recognized exception to the warrant requirement. See, *e.g.*, *United States v. Santana*, 427 U.S. 38, 42-43 (1976) (hot pursuit of a fleeing felon); *Warden v. Hayden*, 387 U.S. 294, 298-299 (1967) (same). The Supreme Court has defined hot pursuit as the "immediate or continuous

pursuit of the petitioner from the scene of a crime." *Welsh v. Wis.*, 466 U.S. 740, 753 (1984).

Here, the pursuit of Alberto Martinez by the police obviously satisfies this definition, and the

warrantless entry to the Martinez family compound is unassailable under the hot pursuit doctrine.

Indeed, "a suspect may not defeat an arrest which has been set in motion in a public place... by

the expedient of escaping to a private place." *Santana* at 43.

To allow such testimony would confuse the jury and prejudice Defendant Officers.

Therefore, all testimony regarding the fact that Defendant Officers did not have a search warrant

should be barred.

## DEFENDANTS' MOTION *IN LIMINE* NO. 18

### TO BAR ANY TESTIMONY, EVIDENCE, OR ARGUMENT SUGGESTING THAT THE DEFENDANTS MAY BE INDEMNIFIED BY THE CITY OF CHICAGO FOR ANY COMPENSATORY DAMAGES RETURNED AGAINST THEM

Plaintiff should not be permitted to argue or introduce evidence that the Defendant Officers

may be indemnified by their employer, the City of Chicago, for any portion of a judgment that

may be entered against them. Whether or not the City provides indemnity is irrelevant to the issue

of whether the Defendants are liable for any acts they may have performed which proximately

caused injury to the Plaintiff. Moreover, allowing Plaintiff to make such references would be

highly prejudicial. The jury may feel that even if there were no liability, the Plaintiff should be

compensated for his time and efforts in bringing the lawsuit, particularly in view of the fact that

the City has a "deep pocket." "Even if evidence of indemnification does not offend Rule 411,

such evidence may still be more prejudicial than probative." *Dyson v. Szarzynski*, 13 CV 3248,

2014 U.S. Dist. LEXIS 174671, at *24 (N.D. IL. Dec. 18, 2014) (Kim, M. J.). Knowledge that the

City of Chicago will indemnify the Defendant Officers for possible damages might encourage

jurors to find for Plaintiff, regardless of the facts presented at trial. See, *e.g., Townsend v. Benya*,

287 F. Supp. 2d 868, 874 (N.D. IL. 2003) (Denlow, J.) (excluding indemnification evidence of the

City of Chicago based upon a balancing test). Such knowledge can also lead jurors to inflate an award out of sympathy or other irrelevant factors. This circuit recently found that the "scant probative value of the City's indemnification obligation is greatly outweighed by its unfair prejudice" to Defendants. *Dyson* at *24. Accordingly, Plaintiff should be precluded from adducing or implying that the Defendant Officers may be indemnified or reimbursed by the City.

## DEFENDANTS' MOTION *IN LIMINE* NO. 19

### TO BAR EVIDENCE, ARGUMENT, OR INNUENDO REGARDING QUESTIONING BY CITY ATTORNEYS

Defendants suspect that Plaintiff may attempt to question the witnesses about communications with counsel in this matter. Such questioning should be forbidden as irrelevant and potentially prejudicial. Due to the attorney-client privilege surrounding the discussions, Plaintiff may use the timing of any such discussions to infer misconduct, and neither the Defendants nor witnesses can rebut this conduct without disclosing privileged communications. For instance, Plaintiff's counsel has long made hay of the fact that a police sergeant who was a defendant in the 2009 case contacted his counsel the day after the arrest of Daniel Martinez. Such communication is not relevant to the claims in this case. Further, police, as employees of the city, must meet with their counsel when requested to do so. Therefore, such testimony could have no impact whatsoever on the credibility of the officers or the events at hand. As a result, such questioning or argument should be excluded.

Plaintiff should be barred from commenting or insinuating that counsel acted improperly or unethically during the litigation or implying that counsel is involved in any sort of conspiracy. Such comments are not only meritless, but would also be inflammatory to the jury.

## DEFENDANTS' MOTION *IN LIMINE* NO. 20

### TO BAR ANY ARGUMENT THAT THE JURY SHOULD SEND THE CITY A MESSAGE WITH ITS VERDICT

As a matter of law, Plaintiff cannot collect punitive or exemplary damages from the City as a result of the incident which forms the basis of this lawsuit. 745 ILCS 10/2-102. Sending a message, or punishment, cannot form the basis for any damages other than punitive damages. See *Cobige v. City of Chicago*, No. 06 CV 3807 at Dkt. 215, Jan. 14, 2010 (St. Eve, J.) (citing *Ramirez v. City of Chicago*, No. 05 C 317, 2009 U.S. Dist. LEXIS 107549, at *10 (N.D. IL. Nov. 17, 2009) (Shadur, J.); *Paradiso v. Obaldo*, No. 07 CV 4247, 2009 U.S. Dist. LEXIS 93973 (N.D. IL. Oct. 8, 2009) (Manning, J.)). Any argument implying that the jury should punish, admonish, or send a message to the City would be an improper request for punitive or exemplary damages. Plaintiff should therefore not be permitted to argue or imply to the jury that these concerns can serve as a basis for its award. See, *e.g., Caldwell v. City of Chicago*, No. 08 C 3067, 2010 U.S. Dist. LEXIS 7121, at *7 (N.D. IL. Jan. 28, 2010) (Der-Yeghiayan, J.) (granting motion to bar argument that the jury should send a message to or punish the City with its verdict); see also *Bruce v. City of Chicago*, No. 09 C 4837, 2011 U.S. Dist. LEXIS 83421, at *14 (Dow, J.) (granting motion to bar terms "code of silence" or "blue wall" as unduly prejudicial terms, and barring introduction of argument that "law enforcement officers typically adhere to a 'code of silence' or 'blue wall' or seek to cover up misconduct in order to protect fellow officers.").

## DEFENDANTS' MOTION *IN LIMINE* NO. 21

### TO BAR ANY MENTION THAT DEFENSE ATTORNEYS WORK FOR THE CITY OF CHICAGO OR THE CITY AS A DEFENDANT

Defendants further move this Court for an Order *in limine* barring Plaintiff from making any reference to certain Defendants' attorneys or any of the parties as "Corporation Counsel," "Assistant Corporation Counsel," "The City lawyers," "The City," or similar names and/or terms. Defendants' motion should be granted because reference to Defendants' attorneys' corporate nature and affiliation with the City is improper and will serve no purpose other than to improperly suggest to the jury that the City of Chicago—not the Defendant Officers—will pay any judgment

in this case. See *Dyson v. Szarzynski*, No. 13 CV 3248, 2014 US Dist. LEXIS 174671, at *24-25 (December 18, 2014) (Kim, M.J.), *citing Walker v. Saenz*, No. 91 CV 3669, 1992 U.S. Dist. LEXIS 16454 (N. D. Ill. Oct. 27, 1992).

Any reference to the City as a Defendant should also be barred. Knowledge that the City of Chicago is a party and will indemnify Defendant Officers for possible damages might encourage jurors to find for Plaintiff, regardless of the facts presented at trial. Such knowledge can also lead jurors to inflate an award out of sympathy or other irrelevant factors.

## DEFENDANTS' MOTION IN LIMINE NO. 22

### TO BAR ANY IMPLICATION OR TESTIMONY THAT CHICAGO POLICE DEPARTMENT PERSONNEL ARE BEING PAID BY THE CITY OF CHICAGO TO APPEAR IN COURT AND TESTIFY

Plaintiff has listed a number of Chicago Police Department personnel as witnesses to be called in his case, and have requested Defendants produce those witnesses at trial. Thus, Plaintiff is relying on the City to produce Chicago Police Department personnel to testify in their case. It would be disingenuous for Plaintiff to elicit testimony that these or other police personnel are being paid for their time spent in court. While it will be apparent to jurors that the officers are paid employees of the City, Plaintiff should be barred from arguing that their testimony is somehow being provided in exchange for money. See*, e.g., Dyson v. Szarzynski,* No. 13 CV 3248, 2014 U.S. Dist. LEXIS 174671, at *27 (N.D. IL. Dec. 18, 2014) (Kim, J.) (granting Defendants' motion to bar Plaintiff from arguing or insinuating at trial that the officers are providing testimony in exchange for payment for the City.) Nor is such assertion true. The officer-witnesses are being paid incident to their employment as police officers.

## DEFENDANTS' MOTION *IN LIMINE* NO. 23

### TO BAR ATTORNEYS AND PARTIES FROM CONFERRING OR SPEAKING WITH ANY WITNESS ABOUT THAT WITNESS' TESTIMONY WHILE THAT WITNESS IS STILL UNDER OATH TO PROVIDE SWORN TESTIMONY

The Court should bar all parties and their attorneys from speaking to witnesses during the time they are under oath to testify.

## DEFENDANTS' MOTION IN LIMINE NO. 24

### TO BAR EVIDENCE OR ARGUMENT ABOUT PERSONAL INFORMATION ABOUT PLAINTIFF OR ANY WITNESS THAT WOULD CONSTITUTE IMPROPER BOLSTERING

Plaintiff may attempt to introduce evidence at trial as to his "good" character. Defendants move to bar Plaintiff from introducing such evidence at trial. The introduction of evidence beyond what is minimally necessary to provide the jury with basic biographical and personal information about the Plaintiff is irrelevant. It would tend to create unfair prejudice, confuse the issues, mislead the jury, and waste time. Evidence of Plaintiff's character has no relevance under the circumstances of this lawsuit. Resolution of the case depends almost entirely upon the reasonableness of Defendants' actions.

Moreover, such evidence, even if admissible under Fed. R. Evid. 402, should be barred under Fed. R. Evid. 403 because it suggests that citizens such as plaintiff are entitled to special treatment by law enforcement officers, or jury sympathy, that is not warranted under the circumstances of the events in question, thereby creating unfair prejudice to Defendants, and confusing the jury.

In the alternative, if Plaintiff is allowed to introduce evidence of Plaintiff's alleged good character "good character," Defendants should be allowed to introduce Plaintiffs prior arrests and convictions.

## DEFENDANTS' MOTION IN LIMINE NO. 25

### TO BAR WITNESSES FROM OFFERING THEIR OPINIONS AS TO THE CREDIBILITY OR ACCURACY OF OTHER WITNESSES' TESTIMONY OR STATEMENTS.

Defendants move this Court to bar any witness from offering his opinion as to the

credibility or accuracy of other witness' testimony or statements. Specifically, Defendants anticipate that Plaintiff will question the prosecutors in the Daniel Martinez criminal prosecution on their views of the credibility of Officer Weber and of police officers in general and the prosecutors in an unrelated case about Officer Bogdalek's credibility. First, determining the credibility of witnesses is a task assigned exclusively to the jury. Any witness who gave an opinion as to credibility is barred by Fed. R. Evid. 702 and such testimony will invade the jury's province by improperly telling them to believe this witness' opinion of what happened to Plaintiff. Second, because any opinions offered by witnesses on another's credibility lack a reliable basis, the probative value of such opinion testimony is substantially outweighed by the danger of unfair prejudice. Therefore, under Federal Rules of Evidence 702, 401, and 403, all witnesses should be barred from giving their opinions as to the credibility or accuracy of other witnesses' testimony or statements.

## DEFENDANTS' MOTION *IN LIMINE* NO. 26

### TO BAR ANY COMMENT ON THE DEFENDANTS'
### FAILURE TO CALL WITNESSES OR PRODUCE EVIDENCE

Plaintiff may attempt to convey to the jury that by choosing not to call a particular witness or present evidence, Defendants are hiding exculpatory evidence, or that if the Defendants choose not to call a witness, that fact reflects poorly on their case. Defendants are under no obligation to put on evidence in their defense, and any argument or implication to the contrary would be improper. Federal Civil Jury Instructions of the Seventh Circuit 1.18.

Defendants anticipate that Plaintiff will try to introduce a video taken by the dash camera in Defendant Weber's vehicle. Defendants believe that the video should be excluded as it is not relevant to the incident, and regardless, is certainly more prejudicial than probative. The video depicts Officers Weber and Buehler traveling to the scene of the incident and exiting the vehicle. It then

28

depicts Officers Weber and Buehler leaving the incident and Officer Weber stating something to the effect of "Another F%*#@! lawsuit."   This video is not relevant to Defendants' interaction with Plaintiff Daniel Martinez at all. It depicts no interaction or communication with or about Daniel Martinez, aside from the single statement, indicating that he believes another lawsuit will result from the event. Such belief is not relevant to the claims brought forth here, as they do not make it more likely true than not that Officer Weber committed any wrongful act against Daniel Martinez. The only evidence that this statement is relevant to is that Officer Weber realized that Daniel Martinez had sued before—which he admits in his deposition, that he knew at that time.

Furthermore, this statement is likely be more prejudicial than probative. Jurors may believe that Officer Weber's statement that this incident would mean another lawsuit would mean he believed that he acted wrongfully or to speculate that Officer Weber has commonly had lawsuits filed against him for the basis of other bad acts (which he has not, and, which would not be admissible regardless). This statement sheds no light on whether Officer Weber (or any of the other Defendants) committed the acts as alleged; therefore it should be barred.

## CONCLUSION

WHEREFORE, Defendants respectfully request that Plaintiff and his witnesses and attorneys be ordered not to mention, refer to, adduce, interrogate concerning, voluntarily answer, introduce any physical evidence concerning, or attempt to convey to the jury at any time during these proceedings in any manner, directly or indirectly, the subject matters stated above, and that each counsel be instructed to warn and caution each and every witness under their control appearing in this litigation to strictly comply with the ruling of this Court.

Dated: November 23, 2015.

Respectfully submitted,

*/s/Mary S. McDonald,*
Mary S. McDonald,
Attorney No. 6199995
City of Chicago Law Department
30 N. LaSalle St. #900
Chicago, IL 60602
312-744-8307
Attorney for Defendants City of Chicago, Jeffrey Weber and Juan Chavez

*/s/ Gary Ravitz*
Attorney No. 2291495
*/s/ Eric Palles*
Eric Palles
Attorney No. 2136473
Ravitz and Palles, P.C.
203 N. LaSalle St. #2100
Chicago, IL 60601
(312) 558-1689
Attorneys for Allyson Bogdalek