**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DANIEL MARTINEZ, | ) | |
| | ) | |
| Plaintiff, | ) | No. 14-cv-369 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND OPINION ORDER**

Before the Court is Defendants' motion for partial summary judgment [174]. For the reasons set forth below, Defendants' motion [174] is denied. Also before the Court are Defendants' motions in limine 1–29 [140, 184, 185] and Plaintiff's motions in limine A–V [141], which are granted in part and denied in part as set forth below. As a housekeeping matter, Defendants' motion to file instanter an amended reply in support of Defendants' motion in limine no. 2 [163] is granted. This case remains set for a pretrial conference on July 6, 2016 at 1:15 p.m.

**I.     Background**

On January 17, 2012, at approximately 3:45 p.m., non-Defendant officers Reynaldo Nunez and Joaquin Salazar, while on patrol and in their marked squad car, observed a vehicle run a stop sign and attempted to conduct a traffic stop. The offender, subsequently identified as Alberto Martinez (the brother of Plaintiff Daniel Martinez), exited his vehicle and began to run down an alley, tossing a revolver as he fled. After running through the alley and weaving through several streets, Alberto Martinez entered a residence located at the corner of Talman and 55th Street. Officer Nunez followed the suspect into the home, drawing his weapon upon entering.

Officer Nunez searched the home but did not locate the suspect. Within minutes, additional police units arrived, and multiple officers began searching the area, including the interior and exterior of the home.

At some point, Defendant Officer Weber arrived on the scene to help search for "a male Hispanic with long hair, the last name Martinez," also described as a "male Hispanic with ponytail." [198, ¶ 5.] Sometime after entering the home,[1] Officer Weber encountered Plaintiff, who arguably matched the description of the suspect (*i.e.*, Plaintiff is also a Hispanic male, and he had long braided hair at the time [190, ¶ 17]). Although the parties dispute the precise details of the interaction between Officer Weber and Plaintiff, Plaintiff said something along the lines of "Who the fuck are you," "What are you doing here," and "What the fuck is going on?" [198, ¶ 5.] Officer Weber, allegedly thinking that Plaintiff was, or might have been, the suspect in question, ordered him to lie down on the ground. [190, ¶ 19.] Plaintiff refused to comply with Officer Weber's orders and moved towards the door, prompting Officer Weber to restrain Plaintiff.  At some point, Defendant Officer Chavez, who arrived separately on the scene, entered the room and assisted Officer Weber in restraining Plaintiff. The officers placed Plaintiff under arrest, handcuffed him, and placed him in a nearby squad car.

One highly disputed issue is whether Defendants Weber and Chavez acted alone in arresting Plaintiff, or whether a third officer, Defendant Bogdalek, was also involved. Although Defendants deny that Officer Bogdalek was involved in the arrest, there is at least some evidence that a "blonde female" participated in the arrest, and Officer Bogdalek matches that description. The parties also note that Officers Weber and Bogdalek had prior run-ins with the Martinez

---

[1] The parties allude to the fact that the "home" in question was actually two homes that somehow were connected to each other. The home that the suspect, Alberto Martinez, entered was 2622 West 55th Street, and Plaintiff Daniel Martinez lived at 2624 West 55th Street. When Officer Weber encountered Plaintiff, Plaintiff was in his residence, not the residence that Alberto Martinez entered. It is unclear how Officer Weber, or any other officer, accessed the 2624 West 55th Street property. [198, ¶¶ 1–2.]

brothers. More specifically, both officers were named defendants in a civil rights action in which both Alberto and Daniel Martinez were plaintiffs relating to an incident that occurred in September 2008. See *Martinez v. City of Chicago*, 09-cv-5938 (N.D. Ill.). At the time of Plaintiff's arrest, Defendant Bogdalek was still a named defendant in that case, but Officer Weber had been voluntarily dismissed.

At some point while Plaintiff was still in the squad car, Officer Bogdalek saw Plaintiff and said something along the lines of "That's not him. That's Danny." [190, ¶ 39.] About that time, other officers located the actual suspect, Alberto Martinez, hiding in a garbage can in the neighboring gangway. Despite confirmation that Alberto Martinez was the suspect in question, the officers kept Plaintiff in custody. Later that day, Officers Weber and Chavez filed sworn complaints against Plaintiff, each charging him with resisting and obstructing a peace officer in violation of 720 ILCS 5/31-1(a). [190, ¶ 30.] Officer Bogdalek did not create a police report in connection with the arrests of either Martinez brother, nor was she mentioned in any of the other police reports relating to those arrests. [190, ¶¶ 42–43; 198, ¶ 18.]

## II.    Analysis

### A.    Summary Judgment

#### 1.    Legal Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also *Sallenger v. City of Springfield, Ill.*, 630 F. 3d 499, 503 (7th Cir. 2010) (citing Fed. R. Civ. P. 56(c)(2) and noting that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law"). In determining whether summary judgment is appropriate, the court should construe all facts and reasonable inferences in the light most favorable to the non-moving party. See *Carter v. City of Milwaukee*, 743 F. 3d 540, 543 (7th Cir. 2014). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Put another way, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

To avoid summary judgment, the opposing party then must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." See *Koszola v. Bd. of Educ. of City of Chicago*, 385 F. 3d 1104, 1111 (7th Cir. 2004). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## 2. Conspiracy

By way of background, on October 19, 2015, Defendants filed a motion for summary judgment seeking resolution of all claims in Plaintiff's complaint, which includes allegations of illegal search and seizure (Count I), false arrest (Count II), conspiracy (Count III), retaliation (Count IV), indemnification (Count V), and malicious prosecution (Count VI). However,

discovery closed in this case on February 10, 2015 (*i.e.*, more than eight months before Defendants filed their motion for summary judgment), and, at the time of filing, this case was set for trial to begin approximately three months later, on January 11, 2016. During a status hearing on February 26, 2015, counsel for one of the Defendants raised the issue of dispositive motions and noted that if such a motion were filed, it would be limited to a single (unspecified) count. During that discussion, the Court proposed—and the parties accepted—a June 1, 2015 deadline for filing of any dispositive motions, recognizing that the trial date would be no sooner than November 1. Given that discussion, the Court concluded that Defendants' October 2015 motion for summary judgment was untimely, and struck it without prejudice. [See 134.] However, the trial date was later pushed back for unrelated reasons and, in an effort to streamline the issues at trial, the Court allowed briefing to proceed on Defendants' motion for summary judgment, but only as to Plaintiff's civil conspiracy claim (Count III). [172, at 1.] Defendants' renewed motion [174] is now before the Court.

A civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means." *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988). To establish conspiracy liability pursuant to § 1983, a plaintiff must establish that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (citing *Scherer*, 840 F.2d at 442); see also *Hostrop v. Bd. of Jr. College Dist. 515*, 523 F.2d 569, 576 (7th Cir. 1975) ("The doctrine of civil conspiracy extends liability for a tort * * * to persons other than the actual wrongdoer."). Summary judgment should not be granted "if there is evidence from which a reasonable jury could infer the existence of a conspiracy." *Id.* at 510–11 (citing *Cooney v. Casady*, 735 F.3d 514,

518 (7th Cir. 2013). "Because conspiracies are often carried out clandestinely and direct evidence is rarely available, plaintiffs can use circumstantial evidence to establish a conspiracy, but such evidence cannot be speculative." *Id.* at 511 (citing *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003)).

Plaintiff argues that "a reasonable jury could conclude that the Defendants agreed to unlawfully continue Plaintiff's seizure in the absence of probable cause." [191, at 9.] According to Plaintiff's version of the facts, this agreement can be inferred because (a) Officers Weber and Bogdalek knew Plaintiff from a prior incident, and both were named defendants in a civil action brought by Plaintiff and his brother, (b) all three officers continued to detain Plaintiff despite knowing that he was innocent (*i.e.*, once police apprehended Plaintiff's brother and identified him as the suspect in question), and (c) Officers Weber and Chavez filed the same "false" charge against Plaintiff and both omitted Officer Bogdalek from their police reports despite evidence that she was involved in the arrest. Plaintiff says that "[t]he purpose of the continued unlawful seizure was to exact revenge on Plaintiff for his then[-pending] lawsuit while covering up the Defendants' illegal entry into the wrong home and seizure of the wrong person in the wrong place." [*Id.*] Further, Plaintiff claims that the conspiracy continued beyond Plaintiff's arrest in that Defendants "caused false and baseless charges against Plaintiff through false police reports, false and shifting testimony, false criminal complaints, and, in Bodgalek's case, the omission of any official report of her conduct at the scene in order to bolster her claim of minimal involvement and now catastrophic memory failure." [*Id.*]

Defendants' primary argument is that Plaintiff has failed to produce any "evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 305 (7th Cir. 2011). Temporally speaking, the "meeting of

the minds" allegedly occurred when "Defendants agreed to unlawfully continue Plaintiff's seizure in the absence of probable cause." [191, at 9.] This would have been just after Defendants learned that Plaintiff's brother—*i.e.*, the actual suspect—had been apprehended, which happened while Plaintiff was handcuffed in a squad car. Plaintiff says that if there wasn't a conspiracy in place at this time, then the officers would have released Plaintiff. Instead, they conspired to keep Plaintiff in custody, now under an "obstruction of justice" theory.

The Court concludes that there is sufficient evidence upon which a jury could infer a meeting of the minds. Defendants allegedly learned about the apprehension of Plaintiff's brother, the actual suspect, while Plaintiff was sitting handcuffed in a squad car. It is plausible to think that upon learning this news (whether from their fellow officers or from Officer Bogdalek, who allegedly recognized Plaintiff and stated that he was not the suspect), the officers who took part in the arrest (all three Defendants, according to Plaintiff) would have conversed about what to do with Plaintiff, and it is during this time period that they could have devised the scheme to charge Plaintiff with resisting and obstructing a peace officer. One relevant fact is that Plaintiff previously sued two of the officers, both of whom were allegedly involved in Plaintiff's arrest. Also important, if the jury believes that Officer Bogdalek actually was involved in the arrest (despite all three Defendants' testimony to the contrary), then the fact that her name was omitted from any police reports, including the reports of Officers Weber and Chavez, would imply some sort of concerted action amongst Defendants, further adding to the plausibility of Plaintiff's conspiracy theory. Moreover, as explained below in the motions in limine, Plaintiff is entitled to introduce evidence that Officer Bogdalek falsified a police report in a separate matter, and this attack on her credibility could also influence a jury in deciding whether a meeting of the minds

occurred. While Plaintiff's conspiracy theory is built entirely on inference, there is enough inferential evidence to push Plaintiff's theory over the line from speculative to plausible.

One potential problem with this theory is that Defendants admit that when Officer Weber first confronted Plaintiff, the officer told Plaintiff to get down on the ground, and Plaintiff refused, saying something along the lines of "No, who the fuck are you?" while moving towards the door and refusing to comply with the officer's orders. [190, ¶ 18.] And when Officer Chavez entered the room, he saw Plaintiff struggling with Officer Weber as Weber attempted to restrain Plaintiff to keep him from leaving the room. [190, ¶ 20.] If the jury credits this version of the facts, then it may conclude that Defendants Chavez and Weber potentially had probable cause to arrest Plaintiff for "resisting or obstructing a peace officer,"[2] which in turn would mean that the subsequent apprehension and identification of Plaintiff's brother as the suspect did not impact Defendants' right to continue holding Plaintiff in custody. On this view, the officers did not, as Plaintiff argues, "continue Plaintiff's seizure in the absence of probable cause," because the officers *had* probable cause to detain him separate and apart from any potential involvement in the preceding police chase. See *Powell v. City of Berwyn*, 68 F. Supp. 3d 929, 946 (N.D. Ill. 2014) ("Defendants had probable cause to arrest plaintiff on November 20, 2004, which negated plaintiff's false arrest claims and, therefore, precludes plaintiff from succeeding on his claim of conspiracy." (quoting *Southern v. City of Harvey, Ill.*, No. 2008 WL 4866337, at *3 (N.D. Ill. Jun. 4, 2008))). That being said, the parties did not adequately address whether the arresting officers had probable cause to arrest Plaintiff for resisting or obstructing a peace officer, and thus Plaintiff's conspiracy claim survives this hurdle as well.

---

[2] "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer * * * of any authorized act within his or her official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a).

Defendants also argue—relying on *Moore v. Morales*, 445 F. Supp. 2d 1000, 1012 (N.D. Ill. 2006)—that Plaintiff's conspiracy claim is unnecessarily redundant because Plaintiff is already suing Defendants for all of the potential predicate constitutional violations, including false arrest, malicious prosecution, and illegal seizure. To elaborate, "conspiracy is not an independent basis of liability in § 1983 actions." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Instead, a § 1983 conspiracy claim is a vehicle by which individuals are held liable for some underlying constitutional violation, usually a means of "spreading the net of liability to additional persons," usually non-state actors. *Niehus v. Liberio*, 973 F.2d 526, 531–32 (7th Cir. 1992). However, "[a] plaintiff cannot prevail [on a conspiracy claim] if the defendants did not cause any injury above and beyond the torts that they allegedly conspired to commit." *Moore*, 445 F. Supp. 2d at 1012 (citing *Niehus*, 973 F.2d at 531–32); see also *Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 435 (7th Cir. 1986) ("If the arrest was constitutionally unreasonable, then the police are liable under § 1983 without regard to the 'conspiracy,' and if not, not.").

Plaintiff's only response as to why his conspiracy claim overcomes this "*Moore v. Morales*" hurdle, as the parties refer to it, is that "[u]nlike in *Moore*, Defendants here are obviously covering up the truth of who was involved," and "Defendants have offered nothing in the way of an explanation of how Chavez and Weber came to file the same false charge against Daniel, absent an agreement to file false charges." [191, at 10.] Setting aside the fact that there is a readily apparent explanation for this "conspiracy"—namely, that Officers Chavez and Weber filed the same charge against Plaintiff because they believed that Plaintiff committed the charged offense—Plaintiff's ability to introduce this conspiratorial evidence does not hinge on whether his conspiracy claim survives. See, *e.g.*, *Fairley*, 578 F.3d at 526 ("Plaintiffs appear to think that the [conspiracy] claim expands the scope of admissible evidence. But Fed. R. Evid. 801(d)(2)(E)

(statement of coconspirator is not hearsay) applies whether or not the defendants are formally charged with a conspiracy.").

Defendants' argument that Plaintiff's conspiracy claim is entirely "subsumed in the other substantive tort claims" is not convincing either. [199, at 3.] To be sure, Plaintiff's conspiracy claim is somewhat amorphous. At first glance, it appears to relate only to a Fourth Amendment illegal seizure claim: "a reasonable jury could conclude that the Defendants agreed to unlawfully continue Plaintiff's seizure in the absence of probable cause." [191, at 9.] But Plaintiff also argues that Defendants carried out this conspiracy by "caus[ing] false and baseless charges against Plaintiff." [*Id.*] Arguably, then, Plaintiff's conspiracy theory could be read to include unlawful seizure, false arrest, and malicious prosecution claims. For the most part, Defendants are correct that these claims overlap with Plaintiff's other substantive counts: Count I (illegal search and seizure against Defendants Weber and Chavez), Count II (false arrest against Defendants Weber, Chavez, and Bogdalek), and Count VI (malicious prosecution against Defendants Weber, Chavez, and Bogdalek). However, there is one discrepancy: Plaintiff incorporates Defendant Bogdalek into his conspiracy-to-unlawfully-seize claim, but *does not* include her in the underlying unlawful-seizure claim. If the jury were to determine that Defendant Bogdalek made an agreement with the other officers to continue seizing Plaintiff's person despite knowledge that they lacked probable cause to do so, it could find Defendant Bogdalek conspiratorially liable for unlawfully seizing Plaintiff even if she did not actually seize him herself. And this logic is true for Plaintiff's other conspiracy theories as well. That is, if the jury concludes "that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives," *Green v. Benden*, 281 F.3d 661, 666 (7th Cir. 2002), but determines that only one of the three Defendants falsely arrested or maliciously

prosecuted Plaintiff, under Plaintiff's § 1983 conspiracy theory of liability, the jury could find the other Defendants liable for those claims as well. Accordingly, Defendants' motion for summary judgment [174] on Plaintiff's conspiracy claim (Count III) is denied.

### B.     Defendants' Motions in Limine

Before assessing the parties' motions in limine, the Court notes one overarching theme, which is its unwillingness to allow the parties to create unnecessary sideshows and mini-trials on issues of little relevance. The Court has, on several occasions, encouraged the parties to focus their arguments and to make efforts to streamline the issues at trial. Nonetheless, the parties have presented the court with almost 50 motions in limine—perhaps the most the Court has seen for a case of any size, and certainly the most for a case with a fact pattern this straightforward. These rulings, then, reflect the Court's effort to assist the parties in further refining the issues at trial.

### 1.     Motion to Bar Reference to Any Violation of Police Regulations

Defendants move in limine to bar Plaintiff from presenting any testimony, evidence, or argument relating to any violation of (or the existence of) any police department rules, policies, regulations, or general orders (*e.g.*, the Chicago Police Department General Orders). Defendants' motion is denied as overbroad.

Although "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of * * * departmental regulations and police practices," *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003), there is no categorical bar preventing parties from introducing such evidence. The general rule is that "any attempt to use violations of CPD General Orders or other policies and procedures as prima facie evidence of a constitutional violation is prohibited," but there "may be other circumstances in which this kind of evidence is admissible." *Gonzalez v. Olson*, 2015 WL 3671641, at *13 (N.D. Ill. June 12, 2015); see also *Thompson v. City of*

*Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (evidence that an officer violated CPD's General Order regarding the use of force was not relevant in determining whether the officer violated the plaintiff's Fourth Amendment rights by using excessive force in apprehending him). The admissibility of such evidence hinges primarily on (a) whether the evidence is relevant, and (b) the extent to which the evidence might prejudice the jury.[3] See Fed. R. Evid. 401, 403. The proponent of such evidence "carries a heavy burden under FRE 401 and 403." *Gonzalez*, 2015 WL 3671641, at *13.

For example, Defendants anticipate that Plaintiff will attempt to introduce evidence that Defendant Weber violated a CPD General Order by failing to wear a lapel microphone during the incident in question. Plaintiff argues that Defendant Weber's failure to comply with this general order shows that he "intended to engage in wrongdoing or, at a minimum, deliberately left open the possibility that he or others might." [148, at 3.] Although this evidence sits near the outskirts of the relevance spectrum, it is arguably relevant to Plaintiff's conspiracy claim (*e.g.*, Defendant Weber intended to hide his conspiratorial agreement with his co-Defendants), and thus Plaintiff may be entitled to question Defendant Weber on this point. That being said, the Court will not permit a sideshow on ancillary evidentiary points such as this, and thus will defer ruling until trial. In addition, should the Court permit some minimal exploration of the lapel microphone issue, it will entertain objections should Plaintiff's presentation of this evidence become cumulative or prejudicial.

Accordingly, ruling on Defendants' motion is deferred. Should either party seek to introduce any evidence of this nature during trial, counsel should request a sidebar beforehand to allow the Court to rule on its admissibility outside of the presence of the jury.

---

[3] The concern is that a jury might mistake evidence that an officer violated a policing standard as evidence that the officer also violated the Constitution. In certain instances, this concern can be addressed by instructing the jury as to the permissible uses of the evidence in question.

## 2.    Motion to Bar Evidence of Defendants' Failure to Preserve Video

Defendants move in limine to bar evidence or argument that the City of Chicago, including any of the named Defendants, failed to preserve the videos from Defendant Bogdalek's and Defendant Chavez's vehicles. Defendants' motion is granted.

As an initial matter, Plaintiff has failed to establish that the video footage in question has any relevance to the issues in this case. See Fed. R. Evid. 401 (Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). For example, this is not an excessive force case where video surveillance of an altercation might inform the jury regarding the officer's reasonableness. And unlike the audio recordings mentioned above that could have captured a "meeting of the minds" amongst Defendants, video footage would do little to elucidate the factual disputes here. For this reason, the Court is unwilling to permit what would surely be a lengthy sideshow regarding "missing evidence," especially considering the high potential for prejudice. Spoliation is a serious matter, and Plaintiff has not raised this issue in a substantive manner (*e.g.*, moved for sanctions or sought an adverse inference) until now, and Plaintiff offers no hard evidence, testimonial or otherwise, to support his theory. It is simply too late in the game to chart this course based solely on speculation, especially considering the low probative value of the evidence in question.

Plaintiff also notes that the allegedly spoliated video footage likely would have an audio component as well, which arguably would increase the potential relevance of this evidence. But this marginal increase in relevance does not outweigh the prejudicial impact that the impending mini-trial on spoliation would have. As discussed above, Plaintiff may be permitted to make his point about missing audio through limited questioning regarding lapel microphones.

### 3.    Motion to Bar Evidence of the City's Customs, Policies, or Practices

Defendants move in limine to bar any evidence, argument, or innuendo regarding alleged policies, customs, or practices involving the City of Chicago—for example, evidence of a "code of silence" amongst police officers, or innuendo that "all cops lie." Defendants' motion is granted.

The evidence in question—*i.e.*, that related to the City's customs, policies, and practices— usually appears only in connection with a *Monell* claim against a municipality, not in cases concerning individual liability. See, *e.g.*, *Obrycka v. City of Chicago*, 2012 WL 601810, at *5–*9 (N.D. Ill. Feb. 23, 2012) (allowing "code of silence" *Monell* claims to proceed beyond the summary judgment stage). Here, the City of Chicago is a named Defendant only for indemnification purposes. In addition, any "code of silence" or "all cops lie" evidence would be unduly prejudicial and would constitute improper propensity evidence. See Fed. R. Evid. 403; *Cooper v. Dailey*, 2012 WL 1748150, at *4 (N.D. Ill. May 16, 2012).

That being said, Plaintiff is entitled to cross examine Defendants on their potential biases. See Fed. R. Evid. 607 ("Any party * * * may attack the witness's credibility."); *United States v. Abel*, 469 U.S. 45, 52 (1984) ("Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."). Accordingly, to the extent that Plaintiff focuses on the Defendant officers involved in this case, he may explore the possibility that Defendants are biased because of their loyalty to one another, but *not* to other police personnel who are not involved in this case. See *Ford v. Bell*, 2012 WL 1416456, at *4 (N.D. Ill. Apr. 24, 2012) (precluding "code of silence" references generally, but allowing the plaintiffs to introduce evidence regarding bias with respect to the defendants in that case); *Maldonado v.*

*Stinar*, 2010 WL 3075680, at *4 (N.D. Ill. Aug. 5, 2010) (same); *Betts v. City of Chicago*, 2011 WL 1837805, at *5 (same); *Caldwell v. City of Chicago*, 2010 WL 380696, at *3 (N.D. Ill. 2010) (same).

### 4. Motion to Exclude Evidence of Defendants' Prior Lawsuits, Etc.

Defendants move in limine to bar testimony, evidence, and argument regarding other civil lawsuits, arrests, and/or the disciplinary histories, and/or complaint registers against Defendants. In response, Plaintiff states that he agrees to refrain from introducing such evidence, except as it relates to Defendant Bogdalek's admitted perjury (discussed in detail below). Plaintiff also reserves his right to change his position to the extent that Defendants' testimony puts this evidence at issue. Accordingly, Defendants' motion is denied as moot. Should either party seek to introduce any evidence of this nature during trial, counsel should request a sidebar beforehand to allow the Court to rule on its admissibility outside of the presence of the jury.

### 5. Motion to Bar Evidence of Defendant Bogdalek's Prior Misconduct

Defendants move in limine to bar Plaintiff from calling Defendant Bogdalek as an adverse witness to question her about her perjurious statements in an unrelated police incident not involving Plaintiff. Defendants' motion is denied.

The prior misconduct in question relates to a well-publicized incident where Officer Bogdalek testified untruthfully in a criminal proceeding relating to a 2010 robbery. According to a recent news account, "[w]hile under oath on the stand, [Bogdalek] told the courtroom she hadn't shown the liquor store owner—who was shot in the leg during the 2010 robbery—a photo spread with [the defendant's] picture prior to his arrest. In reality, she had shown the owner [the defendant's] photo, but the victim initially failed to identify [the defendant] as the assailant." CHICAGO SUN TIMES, *Accused of Perjury, Chicago Police Officer Resigns* (May 30, 2016),

available at http://chicago.suntimes.com/news/accused-of-perjury-chicago-police-officer-resigns/. Bogdalek confessed her perjury after the release of a recording of a phone call that she had with her supervisor in which she mentioned that she had shown lineup photos to the liquor store owner shortly after the robbery. *Id.*

Federal Rule of Evidence 608(b) says that parties are entitled to inquire into specific instances of a witness's conduct on cross-examination if they are probative of the witness's character for truthfulness. Fed. R. Evid. 608(b). Perjuring oneself in a judicial proceeding is a paradigmatic example of such conduct, and there is no question that Defendant Bogdalek actually engaged in this conduct (she's admitted as much).

That being said, the Seventh Circuit has instructed that even if evidence of prior misconduct is relevant as to a witness's truthfulness, "[w]hat questions are allowed remains subject to 'the overriding protection of Rule 403,' which requires that their 'probative value not be outweighed by danger of unfair prejudice, confusion or issues, or misleading the jury.'" *United States v. Abair*, 746 F.3d 260, 263 (7th Cir. 2014) (quoting Fed. R. Evid. 608(b) Advisory Committee Note for 1972); see also *United States v. Seymour*, 472 F.3d 969, 971 (7th Cir. 2007) ("Rule 403 establishes the standard for the exercise of the judge's discretion in evidentiary matters, which of course includes cross-examination" under Rule 608(b)); *Thompson v. City of Chicago*, 722 F.3d 963, 977 (7th Cir. 2013) ("The scope of cross-examination under Rule 608 is subject to Rule 403 balancing, however."). Moreover, Plaintiff must accept the witness's answer in response to the impeaching question(s), and may not introduce extrinsic evidence to further impeach the witness. Fed. R. Evid. 608(b).

Defendants express concern that Plaintiff might use this credibility impeachment as propensity evidence: *i.e.*, if Officer Bogdalek lied in another court proceeding, she must be lying

in this one. Fed. R. Evid. 404(b)(1). Defendants are correct: this evidence *is not* admissible pursuant to Rule 404(b), and *may not* be used as propensity evidence. Indeed, were this evidence not relevant to Officer Bogdalek's character for truthfulness, the Court would exclude it altogether as improper character evidence. But Rule 404 also explains that "[e]vidence of a witness's character may be admitted under Rules 607, 608, and 609." Fed. R. Evid. 404(a)(3). And the very "reason for allowing cross-examination under Rule 608(b) is to allow a party to attempt to cast doubt on a witness's reliability for telling the truth." *Varhol v. Nat'l R.R. Passenger Corp.*, 909 F. 2d 1557, 1567 (7th Cir. 1990). Thus, just because character evidence is inadmissible pursuant to Rule 404(b) does not make that same evidence categorically inadmissible pursuant to Rule 608 as well.

However, Defendants raise a much more concerning basis for potential prejudice in that they continue to contend that Officer Bogdalek was *not* involved in Plaintiff's arrest, and that Plaintiff has exaggerated her role in this incident solely as a means of introducing this impeachment evidence to the jury. For the Court's purposes, the relevance of this impeachment evidence (Rule 401), its potential for prejudice (Rule 403), and the potential for harassment (Rule 601) are directly related to Officer Bogdalek's overall significance in this matter. Thus, although Defendants' motion is denied as a categorical matter (*i.e.*, Plaintiff is not barred from introducing this impeachment evidence altogether), Defendants are free to object to any gratuitous presentations of this evidence.

Importantly, Rule 608(b) expressly limits the introduction of bad-act impeachment to "cross-examination." Fed. R. Evid. 608(b). That being said, the Advisory Committee on the Federal Rules of Evidence recently endorsed the practice of ignoring this "cross-examination" limitation:

> The Committee is aware that the Rule's limitation of bad-act impeachment to "cross-examination" is trumped by Rule 607, which allows a party to impeach witnesses on direct examination. Courts have not relied on the term "on cross-examination" to limit impeachment that would otherwise be permissible under Rules 607 and 608. The Committee therefore concluded that no change to the language of the Rule was necessary in the context of a restyling project.

Fed. R. Evid. 608(b) Advisory Committee Note, 2011 Amendment. At least one treatise has disagreed with the Committee, arguing that impeachment with bad-act evidence on direct examination "probably should not be allowed" as it would permit a direct examiner to "call an adverse or hostile witness merely for the purpose of producing the unfairly prejudicial effects of specific-instances evidence," which "could undermine accurate fact-finding, waste time, and unnecessarily harass the witness." 28 Victor James Gold, FEDERAL PRACTICE & PROCEDURE EVIDENCE § 6119 (2d ed. 2016). While this is a valid point, the countervailing concern is that a party could hide an impeachable witness by refusing to call him or her and instead relying on the opposing party to call the witness, thereby denying the opposing party of its opportunity to "cross-examine" that witness. That is particularly relevant here where the party in question is a named Defendant. Absent binding authority on this issue, the admissibility of this evidence falls within the Court's broad discretion on evidentiary matters. Here, the Court exercises that discretion in allowing Plaintiff to question Defendant Bogdalek about her prior misconduct on direct examination, although (1) that questioning is likely to be strictly limited and closely controlled and (2) Defendants are free to object should Plaintiff's questioning become irrelevant, harassing, or unduly prejudicial. See Fed. R. Evid. 401, 403, 601, 611.

Finally, Defendants argue that Plaintiff plans to call Officer Bogdalek "simply to maximize and dramatize her assertion of Fifth Amendment privilege." [140, at 9.] While the Court is sensitive to the potential prejudice of a party seeking to dramatize a Fifth Amendment invocation, see *Evans v. City of Chicago*, 513 F.3d 735, 740 (7th Cir. 2008), that is not reason

enough to preclude this line of questioning entirely. It is not even clear that Officer Bogdalek will invoke the Fifth Amendment on the stand. But however Officer Bogdalek responds to Plaintiff's questioning, Plaintiff must take her answer. "That expression does not mean that [Plaintiff] may not press further to extract an admission, for instance, by reminding the witness of the penalties for perjury." *McCormick on Evidence*, § 41. But "[i]t is improper to enquire whether the witness was 'fired,' 'disciplined,' or 'demoted' for the alleged act [because] those terms smuggle into the record implied hearsay statements by third parties who may lack personal knowledge." *Id.* Understanding this limitation, and those imposed by Rules 401, 403, and 601, Plaintiff is entitled to question Officer Bogdalek about her prior misconduct as a means of impeaching her credibility.[4]

### 6.      Motion to Bar Reference to the State's Attorney's Conduct

Defendants move in limine to bar reference to a "long running dispute" between Plaintiff's counsel and the Cook County State's Attorney's Office over the destruction of court documents, which resulted in sanctions against the office. See *Martinez v. City of Chicago*, Case No. 09-cv-5938, Dkt. 232 (N.D. Ill. Nov. 20, 2014). The destruction of the criminal file in an unrelated criminal matter is irrelevant to this lawsuit, would create an unnecessary sideshow, and would unduly prejudice Defendants. See Fed. R. Evid. 403, 404(b). Defendants' motion is granted.

### 7.      Motion to Bar "Code of Silence" Evidence

Defendants move in limine to bar testimony, evidence, or argument that police officers

---

[4] The extent of allowable questioning of Officer Bogdalek will be determined on a sliding scale based on Plaintiff's ability to lay a foundation regarding her role in Plaintiff's arrest. For example, if Plaintiff's counsel were to present Officer Bogdalek as his first witness, the Court would significantly limit the scope of Plaintiff's examination. However, if Plaintiff presents multiple witnesses who testify that Officer Bogdalek did in fact play a significant role in Plaintiff's arrest, the Court likely will expand the scope of permissible testimony.

lie, conspire, cover up, or otherwise maintain a "code of silence" or "blue wall" to protect their fellow officers. Defendants' motion is granted.

As stated in response to Defendants' motion in limine #3, any "code of silence" or "all cops lie" evidence would be unduly prejudicial and would constitute improper propensity evidence. See Fed. R. Evid. 403; *Cooper v. Dailey*, 2012 WL 1748150, at *4 (N.D. Ill. May 16, 2012). However, Plaintiff is entitled to cross examine Defendants on their potential biases. See Fed. R. Evid. 607 ("Any party * * * may attack the witness's credibility."); *United States v. Abel*, 469 U.S. 45, 52 (1984) ("Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."). Accordingly, to the extent that Plaintiff focuses on the Defendant officers involved in this case, he may explore the possibility that Defendants are biased because of their loyalty to one another, but *not* to other police personnel who are not involved in this case. See *Ford v. Bell*, 2012 WL 1416456, at *4 (N.D. Ill. Apr. 24, 2012) (precluding "code of silence" references generally, but allowing the plaintiffs to introduce evidence regarding bias with respect to the defendants in that case); *Betts v. City of Chicago*, 2011 WL 1837805, at *5 (same); *Maldonado v. Stinar*, 2010 WL 3075680, at *4 (N.D. Ill. Aug. 5, 2010) (same); *Caldwell v. City of Chicago*, 2010 WL 380696, at *3 (N.D. Ill. 2010) (same).

## 8.    Motion to Bar Evidence of Misconduct by Non-Defendants

Defendants move in limine to bar testimony, evidence, or argument about the conduct of police officers in Plaintiff's (and his brother's) prior interactions with the Chicago Police Department. Defendants' motion is granted.

Defendants anticipate that Plaintiff or his family members intend to testify as to some or all of the following incidents: (1) the September 23, 2008 incident that gave rise to Case No. 09-

cv-5938, (2) an October 2009 incident where Daniel and Vanessa Martinez claim they were verbally abused by other Chicago police officers; (3) testimony by Sofia Martinez that an unidentified officer told her that if she didn't open the door, he could still open it with his gun; (4) the opinion of various Martinez family members that police frequently drive by their home to harass them, and (5) the threat to Vanessa Martinez by an unknown officer that the officer would shoot Plaintiff's dog. These alleged acts of misconduct are irrelevant to this lawsuit, especially considering that, apart from the 2008 incident, they do not involve any of the named Defendants in this lawsuit. The introduction of these alleged facts would create an unnecessary sideshow and would unduly prejudice Defendants. See Fed. R. Evid. 403, 404. Plaintiff's arguments to the contrary are unavailing.

Act #3 arguably is relevant because it relates to the incident it question, namely the officers' entry into the Martinez home(s) while they were pursuing Alberto Martinez. Plaintiff argues that the officer's threat "is relevant evidence of lack of consent," and while that may be true, consent to entry is not a contested issue in this case[5] (and arguably not even a relevant issue), and the introduction of an incendiary comment by a non-Defendant officer within this context most certainly is irrelevant and unduly prejudicial. See Fed. R. Evid. 401, 403. Thus, while Vanessa Martinez may testify as to what she witnessed on the day of Plaintiff's arrest in this matter, the Court will entertain objections to the scope of her testimony should it become cumulative or focus on issues irrelevant to this lawsuit, especially testimony meant to cast non-Defendant officers in a bad light. This applies equally to Plaintiff's allegations that an unknown officer threatened to shoot Plaintiff's dog.

### 9.    Motion to Bar Evidence of Unrelated Police Misconduct

---

[5] Defendants acknowledge that Ms. Martinez did not consent to the officers' entry into the home, and instead argue that they were permitted to enter the home under exigent circumstances.

Defendants move in limine to bar testimony, evidence, or argument regarding allegations of police misconduct by officers unrelated to this incident—namely, highly-publicized incidents involving Chicago Police Officers. Any such evidence is irrelevant and highly prejudicial. Fed. R. Evid. 403; *Rodriguez v. Cervantes*, 2009 WL 3460100, at *2 (N.D. Ill. Oct. 20, 2009) (granting a similar motion); *Morrow v. City of Chicago*, 2011 WL 494577, at *1 (N.D. Ill. Feb. 7, 2011) (same). Defendants' motion is granted.

Plaintiff should tread lightly when making "generalized arguments about the way police dishonesty and misconduct affects society." [148, at 15.] Plaintiff claims that such arguments are relevant to his claim for punitive damages, but punitive damages are intended "to punish *a defendant* for *his* conduct,"[6] and thus invoking a broader concept of general police dishonesty would be inappropriate. While punitive damages are intended to serve as an example or warning to other officers, the "example" is the defendant's wrongdoing. Thus, Plaintiff's counsel may argue that punitive damages are appropriate to serve as an example to other officers that they should not do *what Defendants did in this case*, but Plaintiff may not reference "police dishonesty and misconduct" generally—such arguments are irrelevant and highly prejudicial. Fed. R. Evid. 401, 403.

### 10. Motion to Exclude Evidence of Case No. 09-cv-5938

Defendants move in limine to exclude evidence or argument regarding Case No. 09-cv-5938, the aforementioned civil rights action brought by multiple plaintiffs, including Alberto and Daniel Martinez, relating to an incident from September 2008. Defendants' motion is granted.

To be clear, Defendants do not dispute that the parties may elicit testimony (or stipulate) that, on January 17, 2012, Daniel and Alberto Martinez were plaintiffs in a civil lawsuit that included Officer Bogdalek as a defendant arising from an incident that took place in September

---

[6] Seventh Circuit Pattern Jury Instruction § 7.24 (emphasis added).

2008, and that Officer Weber had also been a defendant in that case prior to being voluntarily dismissed by the plaintiffs. All other information about that lawsuit—including the claims raised, the resolution of the case, the settlement amounts, and the attorneys' fees—is irrelevant and unduly prejudicial. Fed. R. Evid. 401, 403, 404.

Plaintiff argues that, in order to prove his retaliation claim (in which he alleges that Defendants' retaliated against him because he filed the 2009 lawsuit), he should be able to testify that he obtained a judgment against the City of Chicago to show that his prior lawsuit was meritorious. The Court is not persuaded. The City of Chicago—which is not a Defendant in this lawsuit for liability purposes—settled the 2009 lawsuit without admitting liability. In addition, Plaintiff fails to explain how the merit of the claims in the 2009 lawsuit impacts his ability to establish his retaliation claim here. See, *e.g.*, *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008) ("To prevail on their § 1983 retaliation claim, [plaintiffs] need to prove (1) that they were engaged in constitutionally protected speech; (2) that public officials took adverse actions against them; and (3) that the adverse actions were motivated at least in part as a response to the plaintiffs' protected speech."); Fed. R. Evid. 401. But even if the resolution of the 2009 lawsuit were relevant to some degree, that relevance would be outweighed by the prejudice to Defendants, as evidence of a judgment against the City of Chicago would imply some prior wrongdoing or admission of guilt for Defendants. See Fed. R. Evid. 403, 404.

### 11.     Motion to Bar Evidence Regarding IPRA Investigations

Defendants move in limine to bar evidence regarding the Independent Police Review Authority ("IPRA") investigations stemming from any and all complaints from the Martinez family. Plaintiff does not oppose this motion. Defendants' motion is granted.

Any testimony or evidence relating to the IPRA investigations is excluded, except for impeachment purposes based on prior inconsistent statements. More specifically, if Plaintiff wishes to impeach an officer based on a statement that appears in an investigation report, he can do so, but Plaintiff is precluded from mentioning the origins of the prior inconsistent statement (*i.e.*, Plaintiff cannot mention that the prior inconsistent statements were made in connection with any investigation). See *Norton v. Schmitz*, 2011 WL 4984488, at *1 (N.D. Ill. May 27, 2011) ("[W]hen impeaching a witness using an IPRA statement, the attorney shall refer to the statement as one made 'in another proceeding'; the attorney shall not mention 'IPRA' or 'investigation.'").

### 12.    Motion to Bar Evidence of Co-Conspirator Statements

Defendants move in limine to bar Plaintiff from presenting evidence and arguments in support of a conspiracy claim until they satisfy Fed. R. Evid. 104 and Seventh Circuit law governing the admissibility of co-conspirator declarations. Plaintiff responds that he "does not understand this motion," claiming that the alleged co-conspirators' statements will be admissible as statements by a party opponent pursuant to Fed. R. Evid. 801(d)(2)(E), and that he is not aware of any other co-conspirator statements that will be offered at trial. Defendants' motion is denied. The Court is aware of the admissibility standards for statements by a party opponent and for statements of a co-conspirator,[7] and to the extent that Plaintiff attempts to admit statements under the latter exception, Defendants are free to object and hold Plaintiff to his burden.

---

[7] See Fed. R. Evid. 801(d)(2)(E); *United States v. Pust*, 798 F.3d 597, 602 (7th Cir. 2015) ("For a co-conspirator's statements to be admissible under FRE 801(d)(2)(E), the government must establish by a preponderance of the evidence (1) that a conspiracy existed, (2) that the defendant and the declarant were members of the conspiracy, and (3) that the statements were made in furtherance of the conspiracy.").

### 13. Motion to Bar Evidence Regarding Plaintiff's Criminal Acquittal

Defendants move in limine to bar any evidence, argument, or innuendo as to why or how Plaintiff was acquitted of the charged offenses from his January 17, 2012 arrest. As Defendants note, these details of Plaintiff's criminal proceeding are (for the most part) irrelevant to this lawsuit, and their introduction would present a risk of prejudicing the jury as to the merits of Plaintiff's claims. Fed. R. Evid. 401, 403. However, Defendants concede that Plaintiff's acquittal is relevant to establish the "termination of the proceeding in favor of the plaintiff" element of an Illinois malicious prosecution claim, *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996), and are willing to stipulate to this fact. Defendants' motion is provisionally granted. The parties are directed to work together to try reaching a stipulation on this issue and to advise the Court at the next pretrial conference whether they have been successful in that endeavor.

### 14. Motion to Bar Plaintiff from Alleging Physical Injury

Defendants move in limine to bar Plaintiff from testifying as to any injuries that he suffered as a result of his interactions with Defendants surrounding his January 17, 2012 arrest—specifically Plaintiff's claim that he suffered slight wrist pain from being handcuffed—arguing that physical injuries are irrelevant to any of Plaintiff's claims (*e.g.*, Plaintiff does not allege an excessive force claim). Defendants' motion is denied. Although this evidence is not directly related to any particular claims in this case, it is still part of the narrative structure of the event in question. Defendants are free to raise specific objections at trial.

### 15. Motion to Bar Evidence or Argument of Alleged Racial Motivation

Defendants move in limine to bar evidence or argument that Defendants' actions towards Plaintiff were racially motivated. Although racial bias could be relevant to a claim of false arrest, there is no evidentiary basis for introducing allegations of racial animus into this trial, and

Plaintiff does not argue otherwise. In addition, "'[a]ppeals to racial passion can distort the search for truth and drastically affect a juror's impartiality.'" *Dyson v. Szarzynski*, 2014 WL 7205591, at *8 (N.D. Ill. Dec. 18, 2014) (quoting *United States v. Doe*, 903 F.2d 16, 25 (D.C. Cir. 1990)); see also Fed. R. Evid. 403. Defendants' motion is granted.

### 16. Motion to Bar Undisclosed Witnesses

Defendants move in limine to bar Plaintiff from presenting witnesses at trial who were either not disclosed in Plaintiff's Rule 26 disclosure or were improperly disclosed, specifically: Lillian Ramos, ASA Mary McClellan, Darryl Smith, Shaniece Neighbors, Jeffrey McReynolds, and Samantha Acuff. In response, Plaintiff says that the only witnesses that he may call are Lillian Ramos and ASA Mary McClellan.[8] Regarding Lillian Ramos (Plaintiff's girlfriend), the parties provided supplemental briefing on the admissibility of her testimony, as reflected in Defendants' motion in limine #28, which the Court addresses below.

### 17. Motion to Bar References to Officers Not Having a Search Warrant

Defendants move in limine to exclude testimony that the officers failed to obtain a search warrant prior to entering the Martinez residence(s). Defendants' motion is denied. The terms upon which Defendants entered the Martinez residence(s) are relevant to Plaintiff's wrongful search claim. Plaintiff can ask the officers if they obtained a search warrant prior to entering the home, and Defendants can follow-up on cross-examination if necessary. The parties may suggest a jury instruction on the "hot pursuit" doctrine if they wish.

---

[8] At the first pretrial conference, counsel for Plaintiff stated that Plaintiff will not be calling Ms. McClellan as a witness and counsel for all parties confirmed that nobody will call Plaintiff's brother, Alberto Martinez.

**18.      Motion to Bar Reference to the City's Indemnification Obligations**

Defendants move in limine to bar Plaintiff from arguing or introducing evidence that the Defendant Officers may be indemnified by their employer, the City of Chicago, for any portion of a judgment that may be entered against them. Defendants' motion is provisionally granted.

"In the general case courts exclude evidence of indemnification out of a fear that it will encourage a jury to inflate its damages award because it knows the government—not the individual defendants—is footing the bill." *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998); see also *Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996) ("When the defendant is to be fully indemnified, such evidence, far from being required, is inadmissible"). However, if a defendant who benefits from a right to indemnification nevertheless claims an inability to pay damages, the defendant is deemed to have "opened the door" to evidence of the statutory entitlement to indemnification. *Gonzalez v. Olson*, 2015 WL 3671641, at *7 (N.D. Ill. June 12, 2015) ("Evidence of indemnification is generally inadmissible, so if Defendants do not plead poverty as to punitive damages, Plaintiff may not introduce evidence of indemnification for compensatory damages. But if Defendants plead poverty as to punitive damages, they open the door for Plaintiff to offer evidence of indemnification as to compensatory damages.") (citing *Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1030–31 (N.D. Ill. 2011)). Thus, evidence of indemnification is inadmissible unless Defendants open the door by injecting any of the Defendant Officers' personal financial circumstances into the case. If Defendants choose to "apprise the jury of the fact that the individual officers will have to bear [punitive] damages out of their own pockets," then "fairness would dictate that the jury also be informed of the true situation (indemnification) as to compensatory damages," *Galvan v. Nordberg*, 2006 WL 1343680, at *2 (N.D. Ill. May 10, 2006), subject to an appropriate limiting instruction that

"Defendants' finances address punitive damages only." *Townsend v. Benya*, 287 F. Supp. 2d 868, 874 (N.D. Ill. 2003).

### 19. Motion to Bar Evidence Regarding Questioning by City Attorneys

Defendants move in limine to bar evidence, argument, or innuendo regarding the witnesses' communications with counsel relating to this matter. As an example, Defendants suggest that Plaintiff's counsel likely will question a police sergeant who was a defendant in the 2009 case about the fact that he contacted his attorney the day after the arrest of Daniel Martinez. Another example would be referencing attorney–client meetings to imply that a witness's change in testimony was influenced by the attorney (*i.e.*, the attorney instructed the witness to change his or her story). Defendants seek to avoid any implication that their witnesses contacted attorneys because they knew that they had done something illegal, or that the witnesses changed their testimony after meeting with their attorneys. Defendants' motion is granted.

The example of asking a witness when he or she met with an attorney to imply that the witness was aware of his or her wrongdoing presents a potential for prejudice that far outweighs any potential relevance of that evidence. See Fed. R. Evid. 403. Moreover, questioning a witness as to why he or she met with an attorney following Daniel Martinez's arrest would open the door to discussions of the Chicago Police Department's history with the Martinez family (*e.g.*, the testifying officer might say that he or she contacted his or her attorney knowing that the Martinez family is litigious), and the Court will not allow a matter of such little relevance to open the door to that rabbit hole.

As to the second example, arguing (or even implying) that a witness's change in testimony is the byproduct of attorney malfeasance is a serious accusation, and would be highly prejudicial absent credible evidence substantiating such a claim. Plaintiff is entitled to impeach

witnesses with prior inconsistent statements, but cannot argue that the inconsistencies stem from attorney misconduct.

Plaintiff has failed to articulate any instance in which it would be relevant and/or not unduly prejudicial to elicit testimony regarding attorney–client communications. Accordingly, Defendants' motion is granted.

### 20. Motion to Bar Argument that the Jury Should "Send a Message"

Defendants move in limine to bar any argument that the jury should "send the City a message" with its verdict. Defendants' motion is granted.

Because the jury will not be resolving any claims against the City of Chicago in this case (the City is a named Defendant only for indemnification purposes), arguments regarding the City's financial role—whether as an indemnitor or as an independent wrongdoer—are irrelevant. Fed. R. Evid. 401. These arguments are also highly prejudicial because they invoke the City's "deep pockets" and they imply that there is a systemic, municipal-wide problem, and that Defendants are a part of it. See Fed. R. Evid. 403. Plaintiff does not object to Defendants' position. [148, at 21.] Regardless, any such arguments are not permissible. See *Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1033 (N.D. Ill. 2011) ("[Plaintiff] is barred from any argument that the jury should 'send a message' to the City of Chicago.").

However, Plaintiff says that instead of arguing that the jury should send a message to the City, he "intends to argue that the jury should send a message *to the police department* that is sorely needed, as permitted by the jury instruction." [148, at 21 (emphasis added).] Plaintiff is referring to the pattern jury instruction on punitive damages, which says that the assessment of punitive damages is meant to "serve as an example or warning to Defendant *and others* not to engage in similar conduct in the future." Seventh Circuit Pattern Jury Instruction § 7.24

(emphasis added). The "others" in this scenario are other police officers, *not* the police department itself. Invoking the department is tantamount to invoking the City itself, creating the same "deep pockets" concern. More importantly, Plaintiff seemingly wants to use the potential for punitive damages to comment on his perceived faults with the Chicago Police Department. This is highly inappropriate. As the Court explained in response to Defendants' motion in limine #9, punitive damages are intended "to punish *a defendant* for *his* conduct," *id.* (emphasis added), and thus invoking a broader concept of general police dishonesty would be inappropriate. While punitive damages are intended to serve as an example or warning to other officers, the "example" is the defendant's wrongdoing. Thus, Plaintiff's counsel may argue that punitive damages are appropriate to serve as an example to other officers that they should not do *what Defendants did in this case*, but Plaintiff may not air his grievances with the Chicago Police Department generally—such arguments are irrelevant and highly prejudicial. Fed. R. Evid. 401, 403.

To be clear, Plaintiff is entitled to ask the jury to send a message, in the form of an award of punitive (not compensatory) damages, to Defendants or to other police officers generally. See *Case v. Town of Cicero*, 2013 WL 5645780, at *10 (N.D. Ill. Oct. 16, 2013) ("Courts do allow plaintiffs to ask juries to 'send a message' to deter future misconduct by police officers by assessing punitive damages."); *Bruce v. City of Chicago*, 2011 WL 3471074, at *6 (N.D. Ill. July 29, 2011) ("Plaintiff will be permitted to argue that he is attempting to deter Defendant officers and other Chicago police officers from future misconduct.").

### 21. Motion to Bar References to "City" Attorneys

Defendants move in limine to bar Plaintiff from making any reference to certain Defendants' attorneys or any of the parties as "Corporation Counsel," "Assistant Corporation Counsel," "The City lawyers," "The City," or similar names and/or terms. References such as

these would unduly prejudice Defendants by associating them with the "deep pockets" of the municipality, and would confuse the jury as to the City's role (or lack thereof) in this litigation. Fed. R. Evid. 403. Defendants' motion is granted.

### 22.    Motion to Bar Evidence that Witnesses Are Paid to Testify

Defendants move in limine to bar any implication or testimony that Chicago Police Department personnel are being paid by the City of Chicago to appear in court and testify. Defendants' motion is provisionally granted.

The probative value, if any, of evidence that police personnel are being paid their normal wage to appear in court is outweighed by the potential prejudice of that argument (*i.e.*, that the officers' testimony is biased in favor of the City). Fed. R. Evid. 403. Although Plaintiff does not allege that officers are paid *more* than their standard wage (*i.e.*, an overtime wage) to testify in court, such evidence would be relevant to show bias. See *Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1029 (N.D. Ill. 2011). Plaintiff can ask CPD personnel whether they are being paid *more than* their normal wage to testify and, if they are, Plaintiff can argue regarding the officers' potential bias. Plaintiff cannot elicit testimony that testifying CPD personnel are being paid *in general*, or in accordance with their normal wage, nor can Plaintiff argue that being paid a normal wage to testify is evidence of bias. See *Id.* ("[Plaintiff] is barred from any argument or testimony that Chicago Police Department personnel are being paid any amount less than or equal to the wages they are normally paid to do their jobs as compensation for appearing in court and testifying, (2) [Plaintiff], however, may argue or elicit testimony to show that Chicago Police Department personnel are being paid *more* than their normal wage to appear in court or testify since such evidence would be probative of those employees' bias."). To be sure, any questioning of this issue should be very brief; Plaintiff may make the point, but may not belabor it.

### 23. Motion to Bar Witness Communications During Testimony

Defendants' move in limine to bar attorneys and parties from conferring or speaking with any witness about that witness's testimony while that witness is still under oath to provide sworn testimony. Plaintiff does not object to this motion. Defendants' motion is granted.

### 24. Motion to Bar Evidence of Plaintiff's "Good" Character

Defendants move in limine to bar evidence or argument as to Plaintiff's "good" character (*e.g.*, "bolstering" of Plaintiff's character). Defendants' motion is premature, and thus is denied. Defendants may raise this objection at trial.

"'Bolstering' is the practice of offering evidence solely for the purpose of enhancing a witness's credibility before that credibility is attacked. Such evidence is inadmissible because it 'has the potential for extending the length of trials enormously, * * * asks the jury to take the witness's testimony on faith, * * * and may * * * reduce the care with which jurors listen for inconsistencies and other signs of falsehood or inaccuracy." *United States v. Lindemann*, 85 F.3d 1232, 1242 (7th Cir. 1996) (quoting *United States v. LeFevour*, 798 F.2d 977, 983 (7th Cir. 1986)). But once a witness's credibility has been attacked, "the non-attacking party is permitted to admit evidence to 'rehabilitate' the witness." *Id.*

Because Defendants have not articulated any specific concerns, the most Court can say at this point is that, upon objection by either party, the Court will enforce these standards regarding bolstering and rehabilitating witnesses.

### 25. Motion to Bar Witnesses from Making Credibility Determinations

Defendants move in limine to bar any witness from offering an opinion as to the credibility or accuracy of other witness's testimony or statements. Plaintiff does not oppose this motion. Defendants' motion is granted.

### 26. Motion to Exclude Commentary on Missing Witnesses or Evidence

Defendants move in limine to bar comment regarding Defendants' decision not to call a particular witness or not to present certain evidence. Confusingly, however, Defendants' argument in support of this motion relates to their request that the Court bar Plaintiff from introducing a video taken by the dash camera in Defendant Weber's vehicle. Then, in their reply brief, Defendants argue that Plaintiff should be barred from arguing that Defendants' spoliated evidence.

Breaking this down, Defendants' motion is granted as to excluding argument about missing witnesses. "[W]hen the witness is equally available to both sides, the preferred practice is to preclude the [missing witness] argument rather than to leave the jury free to speculate about a lot of non-evidence." *United States v. Simpson*, 974 F.2d 845, 848 (7th Cir. 1992). If Plaintff concludes that he has a basis to make out an exception to the rule pronounced in *Simpson*, he may raise his argument with the Court, but he must do so outside the presence of the jury and in advance of referencing any uncalled witnesses.

Defendants' argument regarding missing evidence is denied as overbroad. The Court could envision instances where the absence of evidence is relevant. For example, if Defendants fail to present any evidence, other than the testimony of the Defendants themselves, showing that Officer Bogdalek was not involved in Plaintiff's arrest, Plaintiff might reference that lack of evidence.

However, Defendants' motion to bar Plaintiff from arguing, directly or indirectly, that Defendants' spoliated evidence is granted for the reasons explained in response to Defendants' motion in limine #2.

Finally, Defendants' motion to exclude Officer Weber's dash cam video is granted in part and denied in part. The Court has not seen the video in question, and thus is unable to rule on its relevance generally. But to the extent that the video captures Officer Weber saying something to the effect of "Another fucking lawsuit!" after his interactions with Plaintiff, Defendants' motion is granted. That comment is irrelevant to the claims at issue in this lawsuit, and would open the door to additional irrelevant information regarding the Martinez family's history with the Chicago Police Department, which has the capacity of unfairly prejudicing both sides. See Fed. R. Evid. 401, 403. More importantly, this testimony would lead to an unnecessary sideshow that would distract the jury from the narrow set of relevant issues in this lawsuit.

### 27. Motion Missing

There does not appear to be a motion #27, perhaps due to a numbering error.

### 28. Motion to Exclude Testimony of Liliana Ramos

Defendants move in limine to exclude the testimony of Plaintiff's girlfriend, Liliana Ramos, as irrelevant, as a waste of time, unfairly prejudicial, and improper character evidence. Defendants' motion is denied.

Plaintiff disclosed Ms. Ramos as a witness with knowledge of Plaintiff's damages. When deposed, Ms. Ramos confirmed that she has no first-hand knowledge of the events of January 17, 2012 (she was not present at the scene), and said that she intended to testify at trial as to "what kind of person [Plaintiff] is." [184-1, at 15.] In response to Defendants' motion, Plaintiff agrees that Mr. Ramos should be precluded from offering impermissible character evidence, but claims that her testimony is still relevant to explain how "this ordeal has impacted [Plaintiff's] life and his emotional and psychological distress." [196, at 2.] Plaintiff criticizes Defendants for failing to adequately inquire as to these issues during Ms. Ramos's deposition.

Having read Mr. Ramos's deposition transcript, the Court is skeptical as to the amount of admissible, non-cumulative testimony Ms. Ramos will have to offer. That being said, Plaintiff is entitled to present evidence relevant to his claim for damages, and as Plaintiff's girlfriend during and after the incident in question, Ms. Ramos has a sufficient foundation for testifying on this narrow issue. Suffice to say that, if Plaintiff chooses to call Ms. Ramos at trial, her testimony will be very brief, and Defendants of course are free to raise relevant objections to her testimony at trial.

### 29.    Motion to Bar Certain Testimony of Sergeant Lance Becvar

Defendants move in limine to bar certain aspect of the testimony of Sergeant Lance Becvar. Ruling on Defendants' motion is reserved.

Sergeant Becvar is employed by the Chicago Police Department as a "supervisor in information services over the in-car camera systems." [185, at 1.] At his deposition, Sergeant Becvar testified about, *inter alia*, police officers' duty (pursuant to the Department's General Orders) to wear a lapel microphone, police officers' compliance rate for doing so, and Department strategy/initiatives for requiring officers to do so. Defendants seek to bar Sergeant Becvar from testifying as to these issues at trial, arguing that he is not an expert in this area and thus his testimony is unreliable and misleading. In response, Plaintiff says that he "does not object to the majority of this motion," [196, at 5], arguing that portions of Defendants' motion are overly broad and/or premature.

Breaking this argument down, as to Sergeant Becvar's testimony regarding the Chicago Police Department's general orders regarding lapel microphones, as stated above, the general rule is that "any attempt to use violations of CPD General Orders or other policies and procedures as prima facie evidence of a constitutional violation is prohibited," but there "may be

other circumstances in which this kind of evidence is admissible." *Gonzalez*, 2015 WL 3671641, at *13. The admissibility of such evidence hinges primarily on (a) whether the evidence is relevant, and (b) the extent to which the evidence might prejudice the jury. And the Court also noted that while evidence relating to lapel microphones sits at the outskirts of the relevance spectrum, it may be at least relevant to Plaintiff's conspiracy claim (*e.g.*, whether Defendant Weber intended to hide his conspiratorial agreement with his co-Defendants), and thus the Court will reserve ruling on this point until trial. To be sure, even if limited testimony is admitted on this issue, the Court has stressed that it will not permit a sideshow on ancillary evidentiary points such as this, and the prospect of calling a separate witness on this point after questioning Defendant Weber raises a yellow flag indicating that Plaintiff may be taking this issue too far. Thus, ruling is reserved. If the Court permits any testimony from Sgt. Becvar, it will entertain objections should Plaintiff's presentation of this evidence become irrelevant, cumulative, or prejudicial.[9] Fed. R. Evid. 401, 403. Plaintiff must also provide a foundation to show that Sergeant Becvar is competent to testify regarding the Department's requirements.

Second, Plaintiff does not object to omitting Sergeant Becvar's testimony regarding officers' compliance rates for wearing lapel microphones, and thus Defendants' motion is granted as to this point.

Third, Plaintiff argues that Defendants' objection to Sergeant Becvar testifying about CPD strategy/initiatives regarding lapel microphones is overly broad and vague. Plaintiff says that the only testimony that falls into this category is a statement about officer discipline for failing to wear lapel microphones (*i.e.*, part of the Department's strategy for gaining compliance is to discipline those who do not properly use the A/V surveillance systems), and thus that any

---

[9] Plaintiff agrees that Sergeant Becvar lacks knowledge to testify about the history of the Department's general orders regarding the use of lapel microphones or A/V surveillance generally.

ruling on this part of Defendants' motion would not provide the parties with any meaningful limitation. The Court disagrees. CPD strategy and initiatives relating to their A/V surveillance systems is irrelevant to the issues in this trial. This part of Defendants' motion is granted.

### C. Plaintiff's Motions in Limine

#### 1. (A) Motion to Bar Use of Undisclosed Documents to Refresh Recollection

Plaintiff moves in limine to bar Defendant Bogdalek from using materials not produced during discovery to refresh her recollection. More specifically, Plaintiff says that Defendant Bogdalek has testified that she remembers very little about the day of Plaintiff's arrest, and Plaintiff is concerned that Ms. Bogdalek might appear at trial "with a suddenly reinvigorated memory" through her review of notes that she prepared for her attorneys at the time of the incident. It is unclear whether these documents actually exist, but apparently Defendants invoked the attorney–client privilege in response to Plaintiff's inquiries about any such documents. Plaintiff's motion is denied.

Although neither party cites it, Federal Rule of Evidence 612 governs this motion. The rule "gives an adverse party certain options when a witness uses a writing to refresh memory * * * before testifying, if the court decides that justice requires the party to have those options." Fed. R. Evid. 612(a), (a)(2). Ordinarily, the "adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony." Fed. R. Evid. 612(b). However, the Notes of the House Judiciary Committee clarify that "nothing in the Rule [should] be construed as barring the assertion of a privilege with respect to writings used by a witness to refresh his memory." Fed. R. Evid. 612, Notes of Committee on the Judiciary, H. Rep. 93-650. To be sure, certain privileges are qualified, and thus can be overcome if the adverse party can demonstrate

sufficient need for the documents, but no such arguments have been made here. See, *e.g.*, *E.E.O.C. v. Continental Airlines, Inc.*, 395 F. Supp. 2d 738, 744–45 (N.D. Ill. Oct. 11, 2005). In fact, it is still unclear whether these documents even exist, even though this issue arose prior to the close of discovery. But discovery has now been closed for more than 16 months, and the time for arguing about document production and privilege logs has long since passed.

### 2.    (B) Motion to Bar Evidence Unrelated to Probable Cause

Plaintiff moves in limine to bar a series of potential topics as irrelevant pursuant to Federal Rule of Evidence 402, which says that "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. Specifically, Plaintiff alleges that the only basis for relevance is "whether the Defendants had probable cause to search, seize, arrest, and charge," and Plaintiff claims that certain evidence related to (1) the arrest of Alberto Martinez, (2) the use of mugshots, and (3) the school lockdown that took place during the officer's search for Alberto Martinez are all categorically irrelevant. Plaintiff's motion is denied.

First, the evidence relating to the arrest of Alberto Martinez is highly relevant and, contrary to Plaintiff's assertions, not unfairly prejudicial to Plaintiff. As mentioned throughout these motions in limine, the scope of relevance in this case is narrow, and relates primarily to the events that occurred in the middle of the afternoon on January 17, 2012. And the sole reason that the officers encountered Plaintiff on that day is because of the actions of Plaintiff's brother, Alberto. Thus, the officers' accounts of the pursuit and arrest of Alberto Martinez, Alberto Martinez's conduct, and Alberto Martinez's relationship to Plaintiff, all inform the circumstances under which officers entered the home and conducted their search. To be sure, there are facts about Alberto Martinez that are irrelevant to this case, and there could be a point at which Defendants' presentation of facts about Alberto Martinez becomes cumulative, but Plaintiff has

failed to articulate any set of facts that is categorically excludable at this point. Plaintiff's motion is denied, and Plaintiff may raise relevance objections at trial.

Second, Plaintiff moves to bar Defendants from introducing mug shot photos of Daniel and Alberto Martinez, which Plaintiff surmises Defendants will use to show the resemblance between the brothers. But this information is relevant to the legal claims in this case to the extent that any of the arresting officers contends that he or she thought that Plaintiff was the suspect in question. See, *e.g.*, *Common v. City of Chicago*, 661 F.3d 940, 943 (7th Cir. 2011) (the objective reasonableness of an officer's actions is based in part on the "circumstances known and the information available to the officer at the time of his action"). In reply, Plaintiff withdrew his objection to the use of Plaintiff's mugshot (assuming it is "scrubbed" of police data and not referred to as a "mug shot," which the Court agrees is appropriate to avoid Fed. R. Evid. 403 concerns), but maintains that Alberto Martinez's mug shot is irrelevant. The Court disagrees—the extent to which the brothers may resemble each other is relevant. This motion is denied.

Third, Plaintiff seeks to exclude evidence that a local school was on lockdown while the police searched for Alberto Martinez. Defendants argue that this fact is relevant to the determination of probable cause, which considers "the facts as they reasonably appeared to the arresting officer, seeing what he saw, hearing what he heard, and so forth." *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007). The Court agrees. The nature and exigency of the search in question is directly relevant to the reasonableness of the officers' actions in conducting the search. Although a gratuitous presentation of this fact could exceed the bounds of relevance (Fed. R. Evid. 401, 403), the fact itself is not categorically excludible. This motion is denied.

### 3.       (C) Motion to Bar Evidence of Fifth Amendment Privilege

Plaintiff moves in limine to exclude evidence that Plaintiff and Alberto Martinez previously asserted the Fifth Amendment privilege during depositions in this case.

Defendants do not object to the exclusion of evidence regarding Plaintiff's invocation of the Fifth Amendment, "unless Plaintiff opens the door." [147, at 13.] This part of Plaintiff's motion is granted. To the extent Defendants believe that Plaintiff has opened the door on this issue, they should inform the Court at a sidebar outside of the presence of the jury before raising the issue.

But Defendants vigorously object to this motion as it relates to Alberto Martinez, arguing that his Fifth Amendment invocation is relevant and probative. However, as noted above, all parties have agreed that Alberto Martinez will not be called to testify at trial. Accordingly, this motion is denied as moot insofar as it applies to Alberto Martinez.

### 4.       (D) Motion to Bar Argument that Oral Statements Amount to Probable Cause

Plaintiff moves in limine to bar Defendants from arguing that Plaintiff's verbal resistance constituted probable cause to arrest Plaintiff for obstructing the arresting officer's access to a room. Plaintiff's motion is denied.

Plaintiff has failed to articulate an evidentiary concern that is appropriate for pre-trial resolution. Plaintiff's argument, it seems, is that Defendants did not have probable cause to arrest Plaintiff. The parties are free to argue this point at trial based on the evidence presented during trial, and the Court will instruct the jury as to the applicable law. If Plaintiff is concerned that Defendants are, "at the eleventh hour, * * * manufactur[ing] new theories of probable cause" [154, at 12], they are free to impeach the officers with their pre-eleventh-hour theories. And both parties are free to object at trial should either party misstate the law to the jury.

5.      **(E) Motion to Bar Evidence About Pulling Away to Defeat Arrest**

Plaintiff moves in limine to bar Defendants and their witnesses from speculating that Plaintiff pulled away to "defeat his arrest." [141, at 8.] Plaintiff agrees that the arresting officer(s) can testify that Plaintiff pulled away from them, but he seeks to bar the officer(s) from concluding that Plaintiff did so "to defeat arrest." While in theory this seems like a speculative comment, the Court concludes that there are too many variants of this response that hover the line of admissibility to warrant pre-trial guidance from the Court. For example, if an officer testified that Plaintiff pulled away to such an extent that he precluded the officer from executing the arrest, that would be essentially the same response absent any speculation. With the admonition that the arresting officers likely would not be competent to testify as to *why* Plaintiff moved his body in a particular manner, Plaintiff's motion is denied, and Plaintiff is free to raise speculation-based objections at trial.

6.      **(F) Motion to Bar Evidence or Argument About Attorneys**

Plaintiff moves in limine to bar evidence or argument about the fact that Jared Kosoglad represented Plaintiff or any other person in any other proceeding. Plaintiff's motion is granted.

Defendants point multiple examples of how Ms. Kosoglad has injected himself into the storied civil and criminal history of the Martinez family, but the Court has done its best in this rulings to make clear that this history is irrelevant to the narrow issues being tried here. Because the Court is barring Plaintiff from raising these subjects, so too Defendants are prohibited from side-tracking this trial by questioning the ethics of Mr. Kosoglad.

7.      **(G) Motion to Bar Misstating Fourth Amendment Law**

Plaintiff moves in limine to bar Defendants from arguing that probable cause to enter one unit in a multi-unit building provides probable cause to search the entire building. Plaintiff's

motion is denied. It is the duty of the Court, not the parties, to instruct the jury on the law. Here, the law is fact dependent, and thus it is not apparent that either party's theory on the reasonableness of the officers' search violated the Fourth Amendment. See, *e.g.*, *United States v. Butler*, 71 F.3d 243, 249 (7th Cir. 1995) ("[W]hen a building is divided into more than one residential unit, a distinct probable cause determination must be made for each unit. * * * There is an exception * * *, however, where 'although appearing to be a building of several apartments, the entire building is actually being used as a single unit.' When this is the case, a finding of probable cause as to a portion of the premises is sufficient to support a search of the entire structure.") (internal citations omitted). The Court will work with the parties in fashioning an appropriate jury instruction on the law and will entertain objections regarding misrepresentations of the law to the jury.

### 8.      (H) Motion to Bar Improper Bolstering of Defendants' Character

Plaintiff moves in limine to bar Defendants from introducing evidence seeking to bolster the character of Defendants,[10] such as with testimony about accommodations or awards. Defendants agree to refrain from introducing such evidence, unless Plaintiff first attacks the credibility of these witnesses. Plaintiff's motion is granted.

### 9.      (I) Motion to Bar Evidence Regarding Drug or Alcohol Use

Plaintiff moves in limine to bar evidence, argument, or implication regarding Plaintiff's use of illegal drugs or alcohol. Defendants agree to refrain from making any such arguments unless Plaintiff opens the door. Plaintiff's motion is granted. To the extent Defendants believe

---

[10] As mentioned above, "'[b]olstering' is the practice of offering evidence solely for the purpose of enhancing a witness's credibility before that credibility is attacked. Such evidence is inadmissible because it 'has the potential for extending the length of trials enormously, * * * asks the jury to take the witness's testimony on faith, * * * and may * * * reduce the care with which jurors listen for inconsistencies and other signs of falsehood or inaccuracy." *Lindemann*, 85 F.3d at 1242 (quoting *LeFevour*, 798 F.2d at 983). But once a witness's credibility has been attacked, "the non-attacking party is permitted to admit evidence to 'rehabilitate' the witness." *Id.*

that Plaintiff has opened the door to such arguments, they should raise the issue with the Court outside of the presence of the jury before making their arguments.

## 10. (J) Motion to Bar Evidence Regarding Attorneys' Fees

Plaintiff moves in limine to bar any reference to Plaintiff's fee arrangement with his attorneys. Defendants agree, except they contend that the jury instruction on damages should mention that the jury need not consider attorney fees in determining damages. Plaintiff disagrees with Defendants' jury instruction comment. Plaintiff's motion is granted, and the Court will resolve the jury instruction issue in due course.

## 11. (K) Motion to Exclude Non-Party Witnesses from the Courtroom

Plaintiff's unopposed motion to exclude non-party witnesses from the courtroom is granted.

## 12. (L) Motion to Bar Argument Regarding Excessive Damages

Plaintiff moves in limine to bar Defendants from arguing during closing that (1) Plaintiff has asked for more money than he expects to be awarded, (2) Plaintiff's recovery is not subject to income tax, (3) defense counsel is shocked by Plaintiff's damages request, and (4) the damages request, or Plaintiff's case, would place a burden upon the public as a whole, or increase taxes, or increase the budget deficit for the City which is suffering from financial difficulties. Defendants do not object to Plaintiff's motion as written, but reserve their right to argue that the damages sought are excessive, disproportionate to the damages actually incurred, or entirely inappropriate. Plaintiff agrees to this carve out. Thus, Plaintiff's motion is granted.

## 13. (M) Motion to Bar Evidence of Prior Arrests and Convictions

Plaintiff moves in limine to bar reference to any and all of Plaintiff's prior arrests and convictions, if any, except as may be relevant to Plaintiff's claim of retaliation. Defendants

agree, "so long as Plaintiff does not attempt to testify that he has never been arrested before or the like." [147, at 24.] Plaintiff did not object to this response. Thus, Plaintiff's motion is granted.

### 14.    (N) Motion to Bar Characterization of Area as "High Crime"

Plaintiff moves in limine to bar reference to the arrest location as a "high crime" area. Defendants agree to this motion. Plaintiff's motion is granted.

### 15.    (O) Intentionally Omitted

Plaintiff's motion in limine "O" is intentionally omitted.

### 16.    (P) Motion to Bar IPRA Records

Plaintiff moves in limine to bar evidence relating to the City of Chicago's IPRA records from the January 17, 2012 incident. Defendants agree, and thus the motion is granted.

### 17.    (Q) Motion to Bar Background Investigations of Jurors

Plaintiff moves in limine to bar Defendants to gain an "unfair advantage" by accessing certain databases to investigate the background of jurors, including CLEAR (Citizen Law Enforcement and Reporting) and LEADS (Law Enforcement Agencies Data System). Plaintiff's motion is granted.

"The propriety of allowing a litigant in a civil case to access police databases to perform background checks on potential jurors and to use such information during *voir dire* is an unsettled question in this district." *Dyson v. Szarzynski*, 2014 WL 7205591, at *2 (N.D. Ill. Dec. 18, 2014). The Court is sensitive to the potential pitfalls of allowing background checks (*e.g.*, empowering jurors to conduct their own background checks of the parties, creating an imbalance of information among the parties), as well as the potential benefits (*e.g.*, the importance of a rigorous and candid *voir dire* process), as discussed in great detail in the *Dyson* opinion. *Id.* at

*2–4. But the logistical hurdles to accomplishing this background search combined with the potential imbalance of information (*i.e.*, even if background checks are made available to both parties, this only backstops one aspect of juror impartiality; namely, one aspect of greater importance to Defendants derived from Defendants' proprietary search software) persuade the Court that exclusion of background checks is the appropriate course of action for this trial. See also *Gonzalez v. Olson*, 2015 WL 3671641, at *8 (N.D. Ill. June 12, 2015) ("Defendants' asserted justification that jurors will lie about their criminal history or arrest record is not such a pervasive problem that it needs to be addressed by conducting criminal background checks on all jurors.").

### 18. (R) Motion to Bar Testimony Regarding 2624 W. 55th Street

Plaintiff moves in limine to bar undisclosed witnesses from testifying that they entered 2624 W. 55th Street prior to Plaintiff's arrest. Plaintiff's motion is denied.

As a general rule, neither party is entitled to present undisclosed witnesses at trial, and Defendants do not object to Plaintiff's motion in this regard. But properly disclosed witnesses may testify that they entered 2624 W. 55th Street prior to Plaintiff's arrest, and to the extent that Plaintiff disagrees with these witnesses, he may attempt to impeach them.

### 19. (S) Motion to Bar Speculation by Erin Hanson

Plaintiff moves in limine to bar speculation by Erin Hanson. Plaintiff does not explain who Erin Hanson is, or what speculative testimony she will offer. Plaintiff's motion is denied, and Plaintiff may object at trial should he feel that Ms. Hanson is speculating in violation of the Federal Rules of Evidence.

### 20. (T) Motion to Include Adverse Inference Regarding Phone Records

Plaintiff moves in limine to request that the Court instruct the jury that they should draw an adverse inference from Defendants Chavez and Weber's failure to produce their phone records. Plaintiff's motion is denied.

Plaintiff concedes that although he moved to compel the phone records in question, Magistrate Judge Cole denied that motion. [66.] Defendants nonetheless agreed to produce the phone records, and to some extent have done so (although they produced a spreadsheet containing edited information found on the actual phone records). While Defendants' production may be unsatisfactory, discovery in this case has been closed for more than 16 months, and the time to object to document productions has long since passed. In addition, in order to warrant an adverse inference instruction, Plaintiff must show that Defendants destroyed the documents in question in bad faith. *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002) (adverse inference requires destruction of evidence in bad faith). But the only allegation here is that Defendants have withheld information, not that they destroyed it or that they did so in bad faith.

### 21.     (U) Motion to Include Adverse Inference Regarding Missing Videos

Plaintiff moves in limine to request that the Court instruct the jury that they should draw an adverse inference from Defendants' failure to produce the videos from the cameras in Defendant Chavez and Weber's squad cars. Plaintiff's motion is denied.

As touched upon in the previous motion in limine, in order to be eligible for an adverse inference instruction, Plaintiff must demonstrate that (a) the documents contained adverse information, and (b) that Defendants "intentionally destroyed the documents in bad faith." *Norman-Nunnery v. Madison Area Tech. College*, 625 F.3d 422, 428 (7th Cir. 2010); *see also Everett v. Cook County*, 655 F.3d 723, 727 (7th Cir. 2011); *S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R. Co.*, 695 F.2d 253, 258–59 (7th Cir. 1983) (same). As to the "adverse

information" requirement, a violation of a records retention policy creates a rebuttable presumption that the missing evidence was unfavorable to the responsible party, but this does not eliminate the need to show bad faith in order to warrant the adverse inference instruction. See *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002) (while the violation of a record retention regulation "'creates a presumption that the missing record[s] contained evidence adverse to the violator,'" "absent bad faith, a violation of * * * [a] record retention regulation[] [does] not automatically trigger an adverse inference.") (quoting *Latimore v. Citibank Fed. Sav. Bank*, 151 F.3d 712, 716 (7th Cir. 1998)); *Beniushis v. Apfel*, 2001 WL 303548, at *4 (N.D. Ill. Mar. 27, 2001) ("[T]o impose the sanction of an evidentiary presumption adverse to the responsible party, it must be found both that (a) the missing evidence was likely unfavorable to the responsible party (which is the presumption drawn from violation of the regulation) and (b) the loss of the records was willful or in bad faith."); *Richardson v. City of Chicago*, 2012 WL 3643908, at *6 (N.D. Ill. Aug. 22, 2012) (a district court need not address whether a document retention policy was violated if the movant fails to establish bad faith or intent).

First, Plaintiff has failed to establish that the missing videos contained "adverse information." As explained in response to Defendants' motion in limine #2, Defendants' interactions with Plaintiff, including the arrest, took place indoors, and thus would not have been captured by the squad car cameras. At most, the video cameras would depict the officers moving about and/or conversing before and after Plaintiff's arrest, but absent any audio feed (which, as explained above, would have captured relevant information), the visual depiction of the officers alone is unlikely to be of any relevance. Plaintiff himself sat in a squad car after his arrest and thus had a vantage point similar to what the officer's surveillance camera would have seen, and

yet Plaintiff has been unable to articulate any relevant evidence that might have been captured on the video surveillance systems.

Plaintiff argues that the "adverse information" requirement is presumed here because Defendants violated the Local Records Act, 50 ILCS 205 *et seq.*, and the Chicago Police Department's document retention policies. See *Latimore*, 151 F.3d at 716 ("The violation of a record retention regulation creates a presumption that the missing record contained evidence adverse to the violator."). In response, Defendants argue that it was *other* officers, not Defendants, who uploaded the mislabeled videos, and Plaintiff does not provide any argument or authority as to why the actions of these non-Defendant officers should be imputed to Defendants. More to the point, though, Defendants cite the 2015 Amendment to Fed. R. Civ. P. 37, which rejects giving adverse inference instructions where the offending party was negligent or even grossly negligent, commenting that "[i]nformation lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have." Fed. R. Civ. P. 37(e)(2) Advisory Committee Note, 2015 Amendment. The Committee Note says that the Rule amendment rejects cases that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence, although the Committee is silent on how the amendment impacts presumptions based on document retention policies. The Committee did note, however, that "court[s] should be sensitive * * * to the fact that * * * independent preservation requirements may be addressed to a wide variety of concerns unrelated to the current litigation," and "[t]he fact that a party had an independent obligation to preserve information does not necessarily mean that it had such a duty with respect to the litigation." *Id.* The Seventh Circuit has not yet addressed how, if at all, the Rule 37 amendment impacts its

rulings on adverse inferences. But the Court need not resolve that issue here because Plaintiff has failed to meet his evidentiary burden of demonstrating that Defendants destroyed the videos in bad faith.

As Plaintiff notes, the Chicago Police Department retains all surveillance footage for 90 days unless the footage relates to a felony arrest or labeled as having evidentiary value to law enforcement or for a legal proceeding, in which case it is preserved indefinitely. Video footage is labeled and uploaded by the on-site officers through a pop-up menu in their squad cars. Although Alberto Martinez was arrested for a felony, non-Defendant officers from Beats 911 and 913 mislabeled the two video recordings in question as a "traffic stop" and a "training video" respectively, meaning that they were not flagged for preservation and thus were automatically purged after 90 days. However, there is no evidence that these non-Defendant officers acted in bad faith in mislabeling these videos, or that the alleged mistakes of the non-Defendant officers should somehow be imputed to Defendants. The only colorable evidence of bad faith offered by Plaintiff relates to Defendant Weber's comment, "Oh great, another lawsuit," which he allegedly said after Plaintiff's arrest. Although not enough to demonstrate bad faith on its own, this comment shows that Defendant Weber was aware of the potential for litigation (or that he was "sensitive to the possibility of suit," as Plaintiff says), and therefore that he had a responsibility to preserve the video footage (to the extent the video had evidentiary value, which the Court finds unlikely). Regardless, the surveillance footage from Defendant Weber's squad car *was* preserved (it was uploaded and labeled as relating to a felony arrest by his partner, Officer Buehler), and that video was produced to Plaintiff. Plaintiff's failure to establish bad faith is fatal to his motion. Plaintiff has not provided any evidence indicating that either Defendant Chavez or Defendant Bogdalek acted in bad faith with regard to the non-Defendant officers' mislabeling of

the surveillance videos, despite his burden to do so. Accordingly, Plaintiff's motion for an adverse inference is denied.[11]

### 22. (V) Motion to Bar Arguments Regarding the Risks of Police Work

Plaintiff moves in limine to bar Defendants from arguing that "police officers risk their lives every day," or other similar comments about the general risks involved with police work. Plaintiff's motion is denied. Both parties have leeway in making their closing arguments, and Defendants' invocation of the general risks of police work is not so far beyond the scope of relevance or so prejudicial that it requires exclusion under Rules 401 or 403. However, the Court will entertain objections at trial should Defendants' arguments become gratuitous or otherwise violate the Federal Rules of Evidence.

## III. Conclusion

For the foregoing reasons, Defendants' motion for partial summary judgment [174] is granted. Defendants' motions in limine 1–29 [140, 184, 185] and Plaintiff's motions in limine A–V [141], are granted in part and denied in part. As a housekeeping matter, Defendants' motion to file instanter an amended reply in support of Defendants' motion in limine no. 2 [163] is granted. This case remains set for a further pretrial conference on July 6, 2016 at 1:15 p.m.

---

[11] The Court is persuaded by the Advisory Committee's comment that the remedies in Fed. R. Civ. P. 37(e)(2) are "severe measures" and "should not be used when the information lost was relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss." Fed. R. Civ. P. 37(e)(2) Advisory Committee Note, 2015 Amendment. The Committee emphasizes that an adverse inference instruction is not the only available remedy under Rule 37(e)(2), and that "subdivision (e)(2) would not prohibit a court from allowing the parties to present evidence to the jury concerning the loss and likely relevance of information and instructing the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision," instead of "instructing a jury it may draw an adverse inference from loss of information." *Id.* Here, Plaintiff has only moved in limine for an adverse inference instruction, and so the Court has no occasion to determine whether a less severe remedy might be available.

Dated:  June 29, 2016

_____
Robert M. Dow, Jr.
United States District Judge